HERBERT E. FINE, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion filed Nov. 19, 1915.

1.  In the trial of an indictment for murder, where the defendant's defense is self-defense and the evidence is conflicting as to who began the difficulty, the defendant may introduce character witnesses to show that the general reputation of the deceased for peace and quiet was bad.

2.  Upon the cross-examination of a character witness it is permissible to enquire into the rumors and reports of particular transactions upon which the witness bases his conclusions as to the reputation of the person concerning whom he testifies. Such examination is permitted for the purpose of testing the credibility of the witness.

3.  Where the trial court errs in the rejection of evidence which may affect the credibility of a witness to a material fact, such ruling constitutes reversible error.

4. It is not error for the trial court to refuse requested instructions which are substantially covered by charges which the court had given.

5. Upon the trial of an indictment for murder where the facts show that the homicide was not committed under circumstances which might constitute murder in the third degree, it is not error on the part of the trial court to fail to instruct the jury upon that degree of murder.

Writ of Error to Circuit Court, Dade County; Geo. Couper Gibbs, Judge.

Judgment reversed.

*Geo. A. Worley & Son,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

ELLIS, J. The plaintiff in error was convicted at the Spring Term, 1914, of the Circuit Court for Dade County of the murder of Harry Harmon, and sentenced to death.

The defendant, referred to above as the plaintiff in error, and the deceased lived in Ft. Lauderdale where the latter conducted a garage. Some time prior to the fatal difficulty between the defendant and Harmon in which the latter was killed, the two men had a dispute about a bill which the deceased had rendered for repairs on the defendant's automobile. On the 6th of December, 1913, the defendant, accompanied by his wife, who was enceinte, their two children and two young ladies, drove in the defendant's automobile from Ft. Lauderdale

to Palm Beach. On the return trip the automobile broke down a few miles from Ft. Lauderdale. The accident occurred about seven o'clock P. M. The defendant sent word to a Harry Baker or a Mr. Crim, by some one passing at the time to come for him. The message was delivered to Baker, who was at Harmon's garage. Baker got his car ready, and with Harmon and a boy named Bailey started for the disabled car. It does not appear that Harmon knew at that time that it was the defendant who wanted assistance. The rescuing party arrived, fastened a tow rope to the disabled machine and started for Ft. Lauderdale, the ladies and children getting into the car in front with Baker, while the defendant, Harmon and the Bailey boy rode in the rear car. It became necessary to ask the assistance of some one who was passing in a car to pull the defendant's car into town, because the load was heavy and the broken machine was difficult to pull. Upon arriving in town the defendant's automobile was taken to Harmon's garage upon the latter's order over the defendant's protest, it appears, and when the party arrived at the garage an altercation arose between the defendant and the deceased over the act of the latter in bringing the machine to the garage and the debt which the defendant owed the deceased for work previously done. There was evidence to show that the language of Harmon on this occasion was profane and very abusive, so much so that Mrs. Fine, who had become excited and nervous, requested Mr. Harmon to desist from the use of such language. It appeared that he apologized to Mrs. Fine and after the apology continued the use of profane and abusive language within the hearing of Mrs. Fine, the children and the two young women. The defendant being unable to get his machine away from the garage,

transferred some packages from his machine to Baker's, and with his family and the two young women returned home in Baker's automobile. Before leaving the garage Fine said he took a pistol out of one of the pockets in the tonneau of his car and placed it in his shirt near his belt. When Baker returned and put up his machine Harmon left the garage.

When the defendant returned with his family to his home, he left again, soon after, with his two children, intending as he said, to find the marshal of the town and procure the arrest of Harmon. At a place near and in front of the postoffice he met a Mr. Reed Bryan and was talking to him when Harmon came up. The defendant and Harmon became engaged in a wordy altercation in which profanity was used by each. The marshal of the town, Morgan Bryan, came along and tried to quell the disturbance by threatening to arrest both of the angry men. It was at this time that the deceased applied to the defendant a harsh and offensive epithet and the defendant replied in language even worse. There was evidence to show that Harmon was standing with his right hand in his coat pocket, and as the defendant replied, took a step forward. The defendant drew his pistol and fired at the deceased, who received the wound in his abdomen which resulted in his death.

The court admitted evidence on behalf of the defendant tending to show that the general reputation of Harmon for peace and quiet in the community was bad. In rebuttal the State produced as a witness Dr. Stafford, who testified that the general reputation of the deceased for peace and quiet was good. Upon cross-examination, the defendant by his counsel propounded to the witness the following question: "Q. You never heard of him

being in trouble with a man by the name of Snipes?" To which question the State objected upon the ground that the question "calls for particular facts and acts." The objection was sustained and the defendant excepted to the court's ruling. C. D. Kitridge was also called by the State in rebuttal, who testified that the reputation of the deceased for peace and quiet was good. Upon cross-examination, the defendant by his counsel asked if he had not heard of the deceased "being in repeated fights around Ft. Lauderdale there." This question was objected to by the State, upon the grounds that the evidence sought was "immaterial and irrelevant; not pertinent to the issues in this case; dealing with particular acts and facts; and relating to a case or matter not relevant to the case now being tried." The objection was sustained, and defendant excepted.

The witness Reed Bryan, called by the State in rebuttal, testified that the reputation of the deceased for peace and quiet was as "good as the average citizen of that place." He, also, was asked upon cross-examination whether he had not heard of the deceased "having several fights around Fort Lauderdale," to which the State made the same objection, which the court sustained and the defendant excepted. These rulings constitute the first, second and fifth assignments of error.

The question is thus presented whether upon cross-examination of a character witness, who testifies to the good or bad reputation of one for peace and quiet the witness may not be interrogated as to particular rumors or statements of individuals in order to ascertain the source of the witness' information and to discredit him by showing his knowledge to be inadequate.

Upon the trial of an indictment for murder where the

defense is self-defense, the character of the deceased as to peace and quiet frequently becomes a material subject for investigation. If the evidence, as in this case, is conflicting upon the question as to who began the difficulty, or whether the deceased's conduct or actions just prior to the encounter reasonably justified the belief that he was about to make an assault upon the accused, evidence as to the general reputation of the deceased for peace and quiet may lead the jury to a correct conclusion as to the guilt of the accused, by enabling them to determine who really began the difficulty, and the reasonableness of the defendant's belief as to imminent danger to himself of great bodily harm or death from the deceased. See Garner v. State, 28 Fla. 113, 9 South. Rep. 835; Hathaway v. State, 32 Fla. 56, 13 South. Rep. 592; Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235; Lane v. State, 44 Fla. 105, 32 South. Rep. 896; Sylvester v. State, 46 Fla. 166, 35 South. Rep. 142; 1 Wigmore on Evidence, § 63.

In this case the defendant had offered evidence tending to show that the general reputation of the deceased for peace and quiet in the community in which he lived was bad. The State in rebuttal produced witnesses to show that the general reputation of the deceased for peace and quiet was good. The questions propounded in cross-examination by the defendant's counsel to these State witnesses inquired into the sources of their information respecting particular evil acts and misconduct of the deceased, as may have come to the attention of the witnesses by rumor. Character is distinct from reputation, the latter being merely evidence of the former; but reputation is merely what is reported or understood from report to be the community's estimate of the person's character.

Where a witness is asked what the reputation of a person is for peace and quiet he is called upon to tell what opinion is generally entertained of such person by those acquainted with him, and in testing the credibility of such witnesses it is permissible to enquire into the rumors and reports of particular transactions upon which he bases his own conclusions as to the reputation of the person enquired about.   1 Wharton's Crim. Evidence (10th ed.) § 490; Jackson v. State, 77 Ala. 18; Note to State v. Roderick, 14 L. R. A. (N. S.) 739; State v. Ogden, 39 Ore. 195, 65 Pac. Rep. 449; Ozburn v. State, 87 Ga. 173, 13 S. E. Rep. 247; Basye v. State, 45 Neb. 261, 63 N. W. Rep. 811; State v. Merriman, 34 S. C. 16, 12 S. E. Rep. 619; State v. Brown, 181 Mo. 192, 79 S. W. Rep. 1111; Smith v. State, 103 Ala. 57, 15 South. Rep. 866; Commonwealth v. O'Brien, 119 Mass. 342; Smith v. State, 10 Ind. 106; 1 Michie on Homicide, p. 696.   Such examination is permitted only for the purpose of testing the credibility of the witness testifying to the good character of the person enquired about, and not as evidence affecting the latter's character.   See Cook v. State, 46 Fla. 20, text 27.

In the case of Annis v. People, 13 Mich. 511, the court said:  "The real purpose of this cross-examination is to enable the court and jury to determine whether the impeaching witness in fact knows the general reputation of the other, and if so, whether he testifies truly in regard to it."   The case of Nelson v. State, 32 Fla. 244, 13 South. Rep. 361, announces a contrary view, citing Garner v. State, 28 Fla. 113, 9 South. Rep. 835, which holds merely that proof of character is made by evidence of general reputation and not by evidence of specific acts or general bad conduct.   The rule thus stated in the Garner case,

we think, is correct; but in the Nelson case the court did not distinguish between evidence of general reputation as given by a witness in chief, and the cross-examination of the witness to test his credibility. In the latter case the judgment was reversed for an error in the verdict. In so far as it announces the rule on the cross-examination of a character witness to be different from that expressed in this case, it is overruled. We think the court erred in its rulings which are made the basis of the first, second and fifth assignments of error, and on this record we cannot say that such errors were not harmful to the plaintiff in error.

The third and fourth assignments of error, which are based upon the reception of the verdict by the court, are without merit. It is set out in the motion for a new trial that the verdict was rendered within twenty-five minutes after the court delivered its charge. The trial began on the second Tuesday in May, 1914, and the verdict was rendered on the twenty-third day of that month. There is nothing in the record to show any irregularity in the rendition of the verdict. A motion for a new trial is not evidence of the statement of facts recited therein.

The assignments of error numbered "sixth, seventh, eighth, ninth, *ninth,* tenth and eleventh," question the correctness of the court's refusal to give certain instructions requested by the defendant numbered one, four, five, seven, eight, ten and eleven. Requested instruction numbered one was misleading in that it seemed to permit the jury to determine whether evidence submitted was competent, a question exclusively for the court's determination. The fourth and fifth requested instructions announced correct propositions of law. The mere fact of killing a person raises no presumption of law that the

slayer is guilty of murder, the burden rests upon the State to prove beyond a reasonable doubt that such killing was unlawful; but these instructions, we think, were fully covered by the court in its general charge, in which the jury were instructed that every homicide is not unlawful, some classes of homicides are lawful and are known in law as justifiable and excusable, and it was the duty of the State to show by the evidence, beyond a reasonable doubt, that the particular homicide was unlawful, before the jury could convict the defendant.

The seventh, eighth, tenth and eleventh requested instructions embodied the law of self-defense as applicable to the facts in this case. The language used in these requested instructions may be found in substance in the language used by this court in the cases of Pinder v. State, 27 Fla. 370, 8 South. Rep. 837, and Smith v. State, 25 Fla. 517, 6 South. Rep. 482. The point emphasized by these charges, which are lengthy, covering several pages of the record, is that where the accused, in a difficulty in which he is not the aggressor, kills another under such circumstances as that from his standpoint, it would be reasonable for a cautious and prudent man to believe that it was necessary for him to take the life of his adversary to protect himself from death or great bodily harm, he should be acquitted. It is of course possible to formulate charges in many forms based upon this law of self-defense. They may go minutely into detail, but such extensive amplifications of the principle of self-defense are argumentative and more or less confusing. See Escambia County Electric Light & Power Co. v. Sutherland, 61 Fla. 167, text 184, 55 South. Rep. 83. In this case the court instructed the jury that if the "circumstances surrounding the accused are such as would induce an ordinary pru-

dent man to believe that he was in danger of death or great bodily harm, that is sufficient, although there is no danger in fact and truth, and in judging the reasonableness of this belief you are not to judge the circumstances surrounding this defendant as they would be judged in the calm of this court room, but must be judged and considered as they appeared to the defendant at the time they were happening." The jury were told to consider the circumstances from the defendant's standpoint at the time of the killing, "see from the evidence as he saw, and hear as he heard, and if after doing this you believe from the evidence that a reasonably prudent and cautious man would under like circumstances have been led to believe that he was in imminent danger of death or great personal injury, and that it was necessary to act to avoid the same as the accused may have acted, then the accused would be justified; or if the evidence is such as to leave upon your minds a reasonable doubt of the same he would have been justified, and this is so whether the danger was actual or only apparent, and in fact there was no actual danger."

This language was free from ambiguity and liberally stated the law of self-defense. To have the substance of this charge repeated in many different forms, reiterated in one instruction after another, is more than the defendant has a right to insist upon. We are therefore of the opinion that there was no error in refusing the requested instructions.

The court did not instruct the jury as to the definition of murder in the third degree, which under the facts in this case was not necessary. The definitions of murder in the first and second degree and manslaughter were

given, and the forms of such verdicts were embodied in the instructions.

For the errors pointed out in not permitting the questions propounded by the defendant's counsel to character witnesses produced by the State, which are made the basis of the first, second and fifth assignments of error, the judgment is reversed and a new trial granted, and it is so ordered.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.