342 So.2d 1057 (1977)
Larry W. WATKINS, Appellant,
v.
STATE of Florida, Appellee.
No. BB-75.
District Court of Appeal of Florida, First District.
February 25, 1977.
Rehearing Denied March 23, 1977.
*1058 J. Lawrence Smith, Green Cove Springs, for appellant.
Robert L. Shevin, Atty. Gen., Carolyn M. Snurkowski, Wallace E. Allbritton, Asst. Attys. Gen., for appellee.
McCORD, Judge.
This is an appeal from appellant's conviction after jury trial of robbery. Appellant raises two points on appeal (a third point was abandoned at oral argument) as follows: (1) the trial court committed reversible error by permitting the prosecuting attorney, over objection, to question defendant as to various previous arrests and criminal charges; (2) the trial court committed reversible error by excluding from evidence testimony as to statements made by appellant and his co-defendant after the alleged crime, which statements related to their knowledge, intent and state of mind at the time of the alleged crime.
The events which culminated in the arrest of appellant and his co-defendant, one Covert, began in a Jacksonville Beach bar. There appellant and Covert approached two plain clothes police officers, Barnhill and Maxwell, and offered to sell them drugs. Appellant and Covert testified that they knew the two were police officers and they decided to arrange a fake drug transaction with them "for the purpose of pulling a prank on them to embarrass them." Their conversation with the officers resulted in the officers going to Covert's apartment to buy drugs from appellant and Covert. At the apartment, when the officers arrived and were admitted, Covert went to his bedroom to get the "drugs" and returned with a rifle. He and appellant then ordered the officers to lie down on the floor. At this point, the testimony becomes conflicting. The officers' version is that they were told to put their money on the coffee table, which they did. Covert testified that Maxwell pulled a wad of money from his pocket and threw it on the coffee table, but appellant testified that he never saw any money. Both appellant and Covert testified that they did not demand any money. The officers testified that Covert demanded Maxwell's wallet, and about this time Barnhill pulled his gun and shot Covert four times while Covert still had the rifle pointed at Maxwell.
Later, at the police station, appellant was questioned by Lt. Russell, and he told Russell *1059 that he and Covert had arranged the fake drug transaction intending to play a joke on the officers, and the joke had gone too far. Later the same morning, appellant made similar statements to Detective Roach; and on the same morning at the Beaches Hospital, Covert made a similar statement to Dr. William J. Lee who was treating him for the gunshot wounds. The record shows that there was no opportunity after the incident for appellant and Covert to have gotten together to frame a story, but there is nothing to indicate that they did not have ample opportunity to frame one prior to the incident. At the trial, appellant proffered his own testimony of his statement to Russell and Roach and proffered testimony of Dr. Lee that Covert had made a similar statement to him. The court sustained the state's objections to the statements, and this is the basis of appellant's Point II on this appeal.
During the trial, the state, on cross-examination of appellant, was allowed, over objection of appellant, to elicit testimony from him of two prior arrests for driving while intoxicated. On one of these arrests, adjudication of guilt was withheld, and he was placed on probation. The other was pending. This is the basis for appellant's Point I on this appeal.
As to Point I, the state contends that the evidence elicited from appellant on cross-examination as to his arrest for driving while intoxicated was admissible because appellant had put his character in issue through the testimony of two witnesses who testified as to his reputation for truth, veracity and integrity. One of these witnesses, appellant's supervisor, was asked on direct if he knew what appellant's general reputation was for honesty, integrity, truth and veracity, to which the witness replied, "Yes, sir." He was then asked what that reputation was, to which he replied, "To my knowledge, its very good." He was then asked the further question by appellant's attorney, "Have you ever heard anyone at his place of employment or in any of the discussions that you have had there regarding him say anything negative about his reputation for truth and veracity, honesty and integrity?" To which the witness replied, "I have heard nothing negative about Mr. Watkins." On cross-examination he was asked, "When asked about his general reputation there at your place of employment,  you say you have no knowledge that he has a bad reputation, is that right?" To which the witness answered, "Yes, sir." He was then asked the question, "Has anybody ever discussed with you or in your presence the fact that he has a good reputation?" To which the witness answered, "There would be no reason to do this." The witness was subsequently asked by the state, "Mr. Collins, You have testified that you never heard anything good about the defendant's reputation, and further that anything bad would have been brought to your attention; is that correct?" To which he answered, "Yes, sir." He was then asked by the state, "Mr. Collins, has anything bad been brought to your attention?" To which he answered, "Yes, sir." Then followed the following questions and answers:
"Q What is that, Mr. Collins?
A Mr. Watkins did tell me when he explained the circumstances regarding this trial that he had been accused of a charge of shoplifting, I believe.
Q It was more than an accusation, was it not, Mr. Collins?
A I didn't go into any detail with him at that time, sir."
The state's question, to which the witness replied that appellant had told him he had been accused of shoplifting, was proper cross-examination in relation to the witness' testimony on direct that he had heard nothing negative about appellant. It revealed that the witness had heard something of a derogatory nature, that went into the formulation of his opinion as to appellant's general reputation for honesty, integrity, truth and veracity. Such was a legitimate test of his opinion. See Fine v. State, 70 Fla. 412, 70 So. 379 (1915); Cook v. State, 46 Fla. 20, 35 So. 665 (1903); and Greenfield v. State, 336 So.2d 1205 (Fla. 4 DCA 1976).
*1060 When appellant took the stand, his attorney asked him if he had ever been convicted of a crime, to which he replied that he had been convicted of shoplifting; that he had pled guilty; that it involved a pair of sandals that were taken from a department store, and he paid a $75 fine. On cross-examination by the state, we come to the testimony elicited from appellant that appellant contends was error. After questioning appellant about his conviction for shoplifting, the assistant state attorney asked the following questions to which appellant gave the following answers:
"Q And, Mr. Watkins, did you also during your candid and forthright conversation with Mr. Collins tell him about your other experiences with the law?
A Yes, sir.
Q The other trouble that you have had?
A That's correct.
Q You did.
What does that consist of, sir?
What is that other trouble?
A It consists of a conviction of DWI with adjudication withheld and a pending DWI.
Q All right, sir.
And you did tell Mr. Collins about that in your conversation?
A Yes, sir, I have.
Q Are you sure about it?
A (No Response)
Q Are you sure of that?
A Yes, sir.
Q Did you hear Mr. Collins refer to that this morning in his testimony?
A I don't recall it, no, sir.
Had the state, on cross-examination of appellant's character witness, specifically asked if he had heard of appellant having been arrested for driving while intoxicated and had the witness answered no, the above quoted testimony would have been admissible if relevant. But it was not admissible, first because it was not relevant. An arrest or conviction for driving while intoxicated is not relevant to one's reputation for honesty, integrity, truth and veracity. Second, even if the testimony were relevant, a proper foundation had not been laid for the impeachment of appellant's character witness by such testimony. While its admission was error, however, we find it to have been harmless error.
As to Point II, appellant was allowed to testify as to his state of mind and intent but was not allowed to corroborate this by testifying that he had told the officers of his intent when questioned at the police station. The statements of appellant to the two officers at the police station were not a part of the res gestae, were self-serving, and therefore inadmissible. The proffered testimony of the doctor as to Covert's statement to him was inadmissible because Covert's statement to him was not a part of the res gestae and was hearsay. Had these statements been offered by appellant in rebuttal of state evidence of a recent fabrication by appellant, and if it could be shown that they had been made prior to such recent fabrication, they would be admissible, but these circumstances are not present here.
Affirmed.
MILLS, J., concurs.
BOYER, C.J., concurs specially.
BOYER, Chief Judge, concurring specially.
I concur in affirmance. However as to appellant's first point, the majority has held the quoted testimony inadmissible but harmless error. I am of the view that under the facts of this case, as recited in the foregoing opinion, the testimony was admissible and therefore not error, harmless or otherwise.