492 So.2d 350 (1986)
Alexander DRAGOVICH, Appellant,
v.
STATE of Florida, Appellee.
No. 65382.
Supreme Court of Florida.
May 29, 1986.
Rehearing Denied August 29, 1986.
*351 John Thor White, St. Petersburg, for appellant.
Jim Smith, Atty. Gen., and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant, Alexander Dragovich, was convicted of one count each of first-degree murder, armed robbery and armed burglary. The trial court sentenced appellant to consecutive forty year terms on the burglary and robbery convictions, retaining jurisdiction for one-third of each sentence. Pursuant to the jury's recommendation, the trial court imposed a sentence of death for the first-degree murder. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the armed robbery and armed burglary convictions and sentences. We also affirm the conviction of first-degree murder, but reverse the sentence of death and remand for a new sentencing proceeding before a jury.
A full recitation of the facts of this cause appears in our opinion reported as Echols v. State, 484 So.2d 568 (Fla. 1985). It is sufficient for our purposes here to note that at this trial, the evidence established that the victim of the murder, Baskovich, was appellant's brother-in-law; the victim's wife and appellant's wife are sisters. Because of personal antipathy between appellant and the victim, and because of appellant's *352 desire to obtain control of the victim's estate, appellant hired Echols to murder Baskovich. Echols then hired Nelson to help in this venture. On April 20, 1982, Echols and Nelson entered the Baskovich's home and separated the husband and wife. While Mrs. Baskovich was confined in the bathroom, two lethal shots were fired into Mr. Baskovich's head. The intruders then robbed the victims taking jewelry and a substantial sum of cash. The evidence at trial established that Echols and Nelson were to be paid in part for their efforts with the proceeds from this robbery. The evidence at trial also established that Mrs. Baskovich was intentionally left alive.
Through what we described in Echols as "excellent police work," the connection was established between appellant and Echols. Through leads provided by the investigation of Echols in this crime, the Clearwater police managed to record, on audio and video tape, three meetings between appellant and an undercover policeman which corroborated the existence of the contract between appellant and Echols for Baskovich's murder. Appellant was arrested at the conclusion of the third meeting.
Appellant's first allegation of error concerns the denial of his motion for disqualification of the trial judge, pursuant to section 38.10, Florida Statutes (1983). Appellant's motion and affidavits and counsel's certificate of good faith required by Florida Rule of Criminal Procedure 3.230(b), were premised on the fact that the judge at appellant's trial had previously presided over the trial of Echols and had therefore heard all of the evidence against appellant and concluded that this was a contract murder procured by appellant. As further grounds supporting disqualification, the motion recited that this judge had sentenced Echols to death in spite of the jury's recommendation of a life sentence and the judge would feel compelled, in the spirit of uniformity, to also sentence appellant to death.
The function of a trial judge when faced with a motion to disqualify himself is solely to determine if the affidavits present legally sufficient reasons for disqualification. Fla.R.Crim.P. 3.230(d). The test for legal sufficiency is whether the party making the motion "has a well-grounded fear that he will not receive a fair trial at the hands of the judge." State ex rel. Brown v. Dewell, 131 Fla. 566, 573, 179 So. 695, 697 (1938).
The essence of appellant's claim of legal sufficiency here is that prior to appellant's trial, this trial judge had formed a fixed opinion of appellant's guilt. In Nickels v. State, 86 Fla. 208, 98 So. 497 (1923), we rejected a similar claim, holding that a judge's fixed opinion of a defendant's guilt, and even his discussing it with others, was legally insufficient to mandate disqualification. Facts germane to the judge's undue bias, prejudice or sympathy are required. 86 Fla. at 224, 98 So. at 502. See also Suarez v. State, 95 Fla. 42, 115 So. 519 (1928) (mere allegations of prior adverse rulings in a case are legally insufficient).
Appellant points out that the "fixed opinion of guilt" rule is predicated in part on the fact that the jury, not the trial judge, will make the final determination of a defendant's guilt or innocence. Appellant urges that a capital sentencing case, where the trial judge is the ultimate arbiter of the life or death of a defendant, requires different considerations. We rejected a similar claim in Jones v. State, 446 So.2d 1059 (Fla. 1984). There, the trial judge had complimented appellant's counsel on the "remarkable job" he had done at trial, and was the same judge who was to hear appellant's ineffective assistance of counsel claim, pursuant to Rule 3.850, Florida Rules of Criminal Procedure. It was the trial judge's denial of the motion to disqualify himself from hearing the rule 3.850 claim that was presented to this Court. Recognizing that "justice should be administered without fear of prejudice or partiality," id. at 1061, we, however, found the fact that merely because the judge had previously heard the evidence (i.e. counsel's performance at trial) and was to be the final arbiter on the rule 3.850 motion, were not, of themselves, legally sufficient facts *353 requiring disqualification. Id. See also Hope v. State, 449 So.2d 1315 (Fla. 2d DCA 1984) (fact that judge found defendant guilty of civil contempt legally insufficient to disqualify the judge from adjudication of a criminal contempt charge against the defendant); State ex rel. Schmidt v. Justice, 237 So.2d 827 (Fla. 2d DCA 1970) (fact that the judge had presided in the first trial resulting in mistrial not sufficient to disqualify in the new trial). We also hold here that without a showing of some actual bias or prejudice so as to create a reasonable fear that a fair trial cannot be had, affidavits supporting a motion to disqualify are legally insufficient. There has been no such showing sub judice that appellant would not receive a fair trial before this judge. Without some other factual basis than was presented in these affidavits, it must be presumed that the trial judges of this state will comply with the law. In capital cases, we must assume that trial judges will fairly weigh the aggravating and mitigating circumstances unique to each defendant in determining the appropriate sentence.
Appellant's next claim of error concerns the publication to the jury of his invocation of his right to counsel. Following his arrest, and after full advisement of Miranda rights,[1] appellant was interrogated by Detective Fire. The interrogation was video taped and was played for the jury. The interview and the taping ceased when appellant requested counsel; the portion of the tape containing appellant's request for counsel was excised before being played for the jury. During direct examination by the state, Fire testified concerning several of appellant's statements made while he was transporting appellant to jail. On cross-examination, appellant's counsel elicited from Fire the fact that none of these statements were taped even though Fire, as a detective, had a tape recorder available to him. On redirect by the state, Fire was allowed to testify, over defense objections, that these particular statements were not taped because appellant had requested counsel and the interrogation had ceased. Fire explained that he was legally required to cease questioning once appellant requested an attorney, and testified that the statements in question were spontaneously volunteered during transportation, and were unanticipated by Fire; therefore, no tape was made. Appellant's motion for mistrial at this point was denied.
Appellant claims this testimony constituted unlawful comment on his right to counsel and he therefore should be granted a new trial. Simpson v. State, 418 So.2d 984 (Fla. 1982), cert. denied, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1004 (1983); Willinsky v. State, 360 So.2d 760 (Fla. 1978); Bennett v. State, 316 So.2d 41 (Fla. 1975). Our review of the record however, shows that the comment in question here clearly comes within the purview of our decision in Jackson v. State, 359 So.2d 1190 (Fla. 1978), cert. denied, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979), wherein we held that "[A]ppellant cannot initiate error and then seek reversal based on that error." Id. at 1194.
Defense counsel's questioning of Fire about appellant's untaped statements made during transportation created the obvious inference that, as all other statements were taped and these were not, Fire was being less than truthful about these particular statements. Appellant clearly "opened the door" for this testimony, Blair v. State, 406 So.2d 1103 (Fla. 1981), and the state was entitled on redirect examination to have Fire explain to the jury why these statements were not taped. Jones v. State, 440 So.2d 570 (Fla. 1983).
Appellant's final allegation of error affecting the guilt phase of this trial concerns the exclusion of jurors who were opposed to the death penalty. We have previously decided this issue adversely to appellant's position. Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984); Dobbert v. State, 409 So.2d 1053 (Fla. 1982).
*354 Finding no reversible error, we affirm appellant's conviction for first-degree murder.

PENALTY PHASE
In an attempt to prove the statutory mitigating factor of no significant history of prior criminal activity,[2] appellant introduced into evidence a "rap sheet" showing that he had no prior arrests or convictions. Appellant also presented several witnesses, including members of his immediate family and also the victim's wife, who testified as to appellant's general character as a good father, husband and provider. During cross-examination of these witnesses, the state asked questions about appellant's alleged involvement in several fires in Gary, Indiana, appellant's home before moving to Florida. The implication resulting from these questions was that appellant had intentionally burned restaurants and other pieces of property in which he had a proprietary interest in order to collect insurance proceeds.
During the state's presentation of rebuttal evidence, two of the victim's children were allowed to testify over defense objections that appellant had a reputation in Gary, Indiana as an arsonist; one of the victim's children testified that appellant's nickname was "The Torch." The state also called Detective Kaminskas, chief fire inspector of the Gary Fire Department, who testified that he had personal possession of records relating to six arsons in Gary in which appellant was a suspect. Although these reports were not introduced into evidence, they were referred to by the detective during his testimony. The prosecutor also called attention to these reports while asking other witnesses about their knowledge of appellant's reputation as an arsonist.
We agree with appellant that the use of this type of reputation evidence was improperly allowed to enter into the penalty phase proceedings thus compromising the weighing process. Therefore appellant is entitled to a new sentencing proceeding. Several distinct reasons compel this result.
In Elledge v. State, 346 So.2d 998 (Fla. 1977), we recognized the unique nature of our capital sentencing scheme, and acknowledged that special considerations are presented when sentencing a defendant to death:
This is so because we believe the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case.
Id. at 1001.
This type of character analysis is not utilized in any other type of criminal proceeding, as evidence offered solely to show the accused's bad character or propensity for criminal conduct is inadmissible. § 90.404(2)(a), Fla. Stat. (1983).
We have long recognized the vital distinction between character and reputational evidence. In Fine v. State, 70 Fla. 412, 70 So. 379 (1915) we stated:
Character is distinct from reputation, the latter being merely evidence of the former; but reputation is merely what is recorded or understood from report to be the community's estimate of the person's character.
70 Fla. at 417, 70 So. at 381. See also State v. Poston, 199 Iowa. 1073, 1074, 203 N.W. 257, 258 (1925) ("character is what a man actually is, while reputation is what his neighbors say he is").
The state's position is that the reputational evidence at issue here is admissible, as section 921.141(6)(a) contemplates as a mitigating factor, prior criminal activity as opposed to prior criminal convictions. Therefore, the state concludes, appellant's reputation as an arsonist and his being a suspect in several arson investigations are admissible facts in order to rebut the mitigating factor of no prior criminal activity. We disagree.
The state is entitled to rebut defendant's evidence of no prior criminal activity by *355 evidence of criminal activity. However, testimony that defendant had a reputation as an arsonist and was called "The Torch," without any evidence of actual involvement in such criminal activity, does not rise to the level of evidence of criminal activity, and denies defendant the fairness in the weighing process that the statute contemplates and that justice mandates.
We have previously held that the state may not use mere arrests or accusations as factors in aggravation, Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Nor have we allowed pending charges, or mere arrests not resulting in convictions, to be used as aggravating factors. Odom v. State, 403 So.2d 936 (Fla. 1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); Perry v. State, 395 So.2d 170 (Fla. 1981). The evidence here is reputational only; appellant was never arrested or charged with any of these arsons. None of the witnesses offered firsthand knowledge of appellant's participation in these crimes. See, e.g., Elledge v. State, 346 So.2d 998 (Fla. 1977); Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). Whatever doctrinal distinctions may abstractly be devised distinguishing between the state establishing an aggravating factor and rebutting a mitigating factor, the result of such evidence being employed will be the same: improper considerations will enter into the weighing process. The state may not do indirectly that which we have held they may not do directly.
Further, section 921.141(1) provides, in part, that all legally obtained, probative evidence, including hearsay, is admissible during the penalty phase, "provided the defendant is accorded a fair opportunity to rebut any hearsay statements."
We find that the hearsay reputational evidence employed here is not susceptible to the fair rebuttal contemplated by the statute. Were we to hold otherwise, penalty phase proceedings could well turn into "mini-trials" on collateral matters. The only rebuttal possible in this context would be for the defendant to introduce witnesses to testify that he did not have a reputation as an arsonist. Assuming, arguendo, that resolution of this issue could result in ascertaining some apparent truth, it would merely establish the truth of the defendant's reputation in some circles as an arsonist.
The potential for abuse, and the resulting prejudice to defendants, in using strictly reputational evidence of this type is manifest. It is noteworthy that here, Detective Kaminikas testified that it is routine practice in his arson investigations to place under suspicion anyone with a proprietary interest in the destroyed property. It will also be noted that the victim's adult children who testified as to appellant's reputation, opined, perhaps understandably, that appellant deserved the death penalty.
We cannot know the effect this testimony had on the jury. Therefore, we vacate the sentence of death and remand for resentencing before a new jury.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH, SHAW and BARKETT, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] § 921.141(6)(a), Fla. Stat. (1983).