PER CURIAM.
Eddie Eugene Alvin appeals the death sentence imposed upon him after his conviction for first-degree murder. We have jurisdiction pursuant to article V, section 3(b)(1), of the Florida Constitution.
Most of the facts surrounding the murder were related by two state witnesses, Wesner Remy and Willie Powell. Remy testified that he, Marvin Brown, Eddie Alvin, and Willie Simmons were driving from Jacksonville to West Palm Beach in a white Volvo. On their way, Marvin Brown, who was the driver of the car, wanted to stop in Daytona Beach in order to see a man named Omar. After driving around Dayto-na Beach, Brown spotted a red car that he thought belonged to Omar. There were two men standing by a telephone booth in the parking lot where the car was located. Believing one of the two men to be Omar, Brown backed the Volvo up to the telephone booth, and Alvin and Simmons got out of the car. Alvin asked one of the men, Willie Powell, to get into the car. When Powell refused, both Alvin and Simmons started shooting at the two men. After several shots were fired, Alvin and Simmons returned to the car and the four men continued their trip to West Palm Beach.
Willie Powell gave a similar, but not identical, version of the events. He said that when the Volvo pulled up to the telephone booth, a man he later identified as Alvin got out of the car and asked him if he knew the whereabouts of Omar. Powell, who was known as Omar, did not admit his identity to Alvin because he saw the outline of a gun in Alvin’s pocket. Instead, Powell said he would telephone Omar, and Alvin returned to the car. Alvin then told Powell to get into the car so that they could ride to Omar’s house. When Powell refused, Alvin and Simmons jumped out of the car and started shooting at Powell and Willie Grimes, who was standing nearby. Just before the shooting began, Simmons yelled, “It’s a jack,” which Powell explained meant that it was a robbery. As Powell was running away, he was struck in the shoulder by a bullet, which passed through his *1114 body and came out of his arm. After the Volvo left the scene, Powell returned to the parking lot where he saw Grimes on the ground, breathing hard. Grimes subsequently died as a result of the gunshot wound.
After the four men arrived in West Palm Beach, police stopped the Volvo because its temporary tag did not have all of the required information on it. Further investigation revealed that Remy, who was now driving the car, had a suspended license and that the car was registered to a person not in the vehicle. Believing that the car may have been stolen, the police conducted a search of the vehicle and discovered the guns that were later determined to have been used in the Daytona Beach shooting.
The jury found Alvin guilty of the first-degree murder of Willie Grimes and recommended the death penalty by a seven-to-five vote. The trial judge found no mitigating circumstances but did find the existence of two aggravating circumstances: the shooting knowingly created a great risk of death to many persons and the murder was committed during an attempted robbery or kidnapping. Alvin was also found guilty of attempted first-degree murder, attempted armed robbery, and attempted kidnapping with a firearm; he was sentenced to concurrent terms of seventeen years, fifteen years, and fifteen years respectively for these crimes.
Alvin raises seven points on this appeal, but only two of them merit our discussion.[1] Alvin first argues that the trial court erred by allowing the state to play a tape-recorded statement made by Wesner Remy to Detective Smith shortly after he was stopped in West Palm Beach. The tape was introduced by the state to rebut the inference that Remy had fabricated his story because the state granted him immunity in exchange for his testimony. To the extent that the tape was consistent with his trial testimony, it was admissible for this purpose. § 90.801(2)(b), Fla.Stat. (1985); Dufour v. State, 495 So.2d 154 (Fla.1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1382, 94 L.Ed.2d 183 (1987). However, Remy’s tape-recorded statement contained information which was not elicited from him in court. In particular, Remy testified in court that he did not know why Alvin and Simmons started to shoot, but on the tape he indicated that the shooting was drug related and involved a “jack” (robbery). While denying the motion for mistrial, the trial judge expressed regret that he had not listened to the tape in advance and edited out those statements which went beyond Remy’s trial testimony. The judge observed:
THE COURT: In any event, gentlemen, the only thing I’m concerned about is the statement it seems to me greatly helps the State’s case, particularly against Mr. Brown[2] in that now all of a sudden Mr. Remy’s taped statement gives some motivation for what was happening here.
Up to this point it seemed to be kind of unclear what the motivation of looking for this man, what the shooting, why all the shooting took place. I am concerned about that aspect.
The admission of the portion of the tape containing the matters about which Remy did not testify in court was error. However, at least as to Alvin, we are also convinced that it was harmless error. In the first place, Powell had already testified that as the two men jumped out of the car, Simmons yelled, “It’s a jack.” Moreover, regardless of the motive for the killing, the evidence clearly supports the conclusion that Alvin committed premeditated first-degree murder. The fatal bullet came from a .38 caliber revolver found in the white *1115 Volvo, and both Powell and Remy testified that Alvin was firing a .38 revolver, while Simmons was firing a 9-millimeter Luger.
Finally, Alvin argues that there was insufficient evidence to support the two aggravating circumstances found by the trial judge. We agree that the evidence does not support the finding that Alvin knowingly created a risk of death to many persons. The judge’s findings indicated that when the shooting took place there were four people in the vicinity, two of whom were Powell and Grimes. There were two women in the area, but they were not in the line of fire. We have previously held that the presence of two persons in the immediate proximity to the victim of a murder by shooting is insufficient to establish this aggravating factor. Odom v. State, 403 So.2d 936 (Fla.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); Lewis v. State, 377 So.2d 640 (Fla.1979); Kampff v. State, 371 So.2d 1007 (Fla.1979). The judge also noted that five minutes after the shooting there were in excess of fifty people at the scene. The mere fact that the shooting occurred in an area where many people congregated after the shooting is not sufficient to support a finding of this aggravating circumstance. On the other hand, Powell’s testimony coupled with the surrounding circumstances sufficiently supported the finding that the murder was committed during an attempt to commit robbery or kidnapping.
Particularly in view of the close jury vote for the death penalty, we are not convinced that the judge would have imposed the same sentence had he known of the invalidity of one of the two aggravating circumstances. Consequently, we affirm Alvin’s conviction for first-degree murder but vacate the death sentence and remand this case for resentencing before the judge, at which either party may introduce additional evidence concerning the penalty. We affirm the remaining convictions and sentences.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.

. With respect to the remaining issues:
(1) The court did not improperly limit the exclusion of black jurors or limit voir dire concerning the death penalty.
(2) The court did not erroneously limit the cross-examination of Detective Greg Smith.
(3) The court did not erroneously deny Alvin’s motion to suppress.
(4) The court did not err in denying certain jury instructions requested by Alvin.
(5) There was sufficient evidence to support the attempted robbery conviction.

. Brown was being tried jointly with Alvin, but only on a theory of felony murder because he had not been involved in the shooting.