599 So.2d 103 (1992)
Douglas Marshall JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 75970.
Supreme Court of Florida.
April 9, 1992.
Rehearings Denied June 22, 1992.
*105 Michael D. Gelety, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Douglas Marshall Jackson, a prisoner under sentence of death, appeals his multiple convictions of first-degree murder and kidnapping and the appendant sentences.[1] We affirm the convictions and the life sentences imposed in connection with three of the first-degree murder convictions. However, we vacate the death sentences and the sentences imposed in connection with the kidnapping convictions.
Jackson was arrested and charged, along with codefendant, Aubrey Livingston, with the kidnappings and first-degree murders of Larry Finney, Walter Washington, Edna Manuel Washington, and Edna's children, four-year-old Terrence Manuel, and fourteen-month-old Reginald Manuel. The two were also charged with the kidnapping of Jackson's ex-wife, Karen Jackson. Jackson was convicted and sentenced to death, but the initial convictions and sentences were reversed by this court in Jackson v. State, 464 So.2d 1181 (Fla. 1985). A second trial ended in a mistrial. A third trial resulted in convictions on all counts except the count charging Jackson with kidnapping his wife. Jackson was sentenced to death for three of the murders. However, the convictions and sentences again were reversed on appeal. Jackson v. State, 545 So.2d 260 (Fla. 1989).
The facts as revealed during the fourth trial are as follows. In January, 1981, Jackson and his wife, Karen separated due to domestic problems. Karen Jackson and the Jackson children went to live with Walter and Edna Washington. While at the Washington home, Karen became involved in an intimate relationship with Larry Finney.
During the early morning hours of March 1, 1981, the charred hulk of a car containing the bodies of Larry Finney, Walter and Edna Washington, and the two Manuel children was discovered by police. Autopsies revealed that Finney and the *106 Washingtons died of gunshot wounds, while the children died from smoke inhalation.
According to Karen Jackson's testimony at trial, Jackson and his codefendant, Aubrey Livingston, came to the Washington home on the evening of February 28, 1981. Jackson forced his way into the bedroom where his wife was hiding. Jackson ordered her to pack her belongings and to come with him. Karen Jackson and the Jackson children were put into the cab of Jackson's truck. Finney, the Washingtons, and Manuel children were put into the camper. Jackson told his wife that he was going to hold the others hostage. According to Karen Jackson, Livingston had a gun but Jackson did not. Jackson drove off, returning briefly to the Washington home to retrieve a jacket for one of the children. After driving around for some time, Jackson drove by an abandoned car several times, eventually stopping. Jackson and Livingston took the victims from the truck and placed them in the car. Karen Jackson then heard popping sounds. Livingston returned to the truck and yelled to Jackson to "hurry up." Karen Jackson then heard an explosion. When Jackson returned to the truck, his face had been burned. After dropping Livingston off at his house, Jackson and Karen returned to the appellant's residence.
Aubrey Livingston also testified. Livingston previously had been convicted and sentenced to death. However, on appeal his convictions and sentences were reversed and the cause was remanded for a new trial. Livingston v. State, 458 So.2d 235 (Fla. 1984). Prior to resentencing after retrial, Livingston agreed to testify against Jackson and was given a life sentence. Livingston's testimony at trial was basically consistent with that of Karen Jackson. However, Livingston claimed that Jackson rather than he had the gun and that he (Livingston) stayed in the truck while Jackson took the victims to the car.
Jackson testified in his own defense, denying any involvement in the murders. Jackson testified that at the time of the murders, he and his wife were having marital problems and that he was about to divorce her and seek custody of their children. According to Jackson, the marital problems arose due to the fact that Karen Jackson allegedly used drugs and had been unfaithful with a number of different men. He testified that on the evening of the murders, his wife brought the children to his house, left the children with him, and took his truck. The next morning, he found her sleeping on the couch. She looked tired and seemed dazed and depressed. He further testified that he received the burns observed at the time of his arrest while barbecuing.
Jackson's fourth trial resulted in five first-degree murder and five kidnapping convictions. The jury recommended life sentences for the five murder convictions. The trial court sentenced Jackson to consecutive life sentences for the murders of the adults, but sentenced him to death in connection with the children's murders. Jackson also was sentenced to consecutive life sentences in connection with the five kidnapping convictions.
Jackson raises the following seven claims in this appeal: 1) the trial judge erred by failing to recuse himself; 2) the trial court erred by admitting Livingston's prior consistent statement; 3) comments by the trial court prevented Jackson from receiving a fair trial; 4) the trial court erred by restricting the presentation of a defense; 5) the trial court erred in imposing the death sentence; 6) the trial court erred in imposing improper sentences on the noncapital felonies; 7) the cumulative effect of various trial court rulings requires a new trial be granted.

MOTION TO DISQUALIFY TRIAL JUDGE
Jackson's first claim involves the trial judge's refusal to recuse himself. Prior to his fourth trial, Jackson filed a motion for disqualification, alleging his belief that the trial judge was prejudiced due to the three previous trials over which he had presided. This motion was denied as legally insufficient.
*107 A renewed motion for disqualification was filed. The second motion reiterated the defendant's belief that the judge was prejudiced due to the fact that he had heard the case no less than five times, including the two trials of Jackson's codefendant. The motion further alleged that the defendant's fear of prejudice was well founded in light of certain comments allegedly made by the trial judge which "seem to infer a predisposition by [the judge] as to the facts that are expected to be presented at his new trial." After a second hearing, the renewed motion also was found to be legally insufficient. In the order denying the second motion, the trial court specifically noted that no further motions to disqualify would be considered due to the ten-day provision in Florida Rule of Criminal Procedure 3.230(c).
After the second motion to disqualify was denied, Jackson sought a writ of prohibition in the Fourth District Court of Appeal. Although the petition was denied, review of that denial by this Court was never sought. Despite the trial court's ruling that no further motions for disqualification would be considered, a third motion was filed prior to sentencing. This motion, which basically reiterated the allegations contained in the first two motions, was denied without a hearing as legally insufficient and as untimely under Florida Rule of Criminal Procedure 3.230(c).
A motion to disqualify must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy. See Gilliam v. State, 582 So.2d 610, 611 (Fla. 1991); Dragovich v. State, 492 So.2d 350, 352 (Fla. 1986). The fact that a judge has previously made adverse rulings is not an adequate ground for recusal. Gilliam, 582 So.2d at 611; Suarez v. State, 95 Fla. 42, 115 So. 519 (1928). Nor is the mere fact that a judge has previously heard the evidence a legally sufficient basis for recusal. Dragovich, 492 So.2d at 352. Likewise, allegations that the trial judge had formed a fixed opinion of the defendant's guilt, even where it is alleged that the judge discussed his opinion with others, is generally legally insufficient to mandate disqualification. Id. at 352. The motions in this case were properly denied as legally insufficient. Accordingly, we find no error in connection with this claim.

GUILT PHASE
Jackson's next claim focuses on the admission of a prior taped statement by Aubrey Livingston that corroborated Livingston's trial testimony. This taped statement was introduced by the state to rebut the inference that Livingston had a motive to fabricate his story in light of his agreement to testify against Jackson. To the extent the taped statement was consistent with Livingston's trial testimony, it was properly admitted under section 90.801(2)(b), Florida Statutes (1989).[2]Alvin v. State, 548 So.2d 1112, 1114 (Fla. 1989); accord Stewart v. State, 558 So.2d 416, 419 (Fla. 1990); Kelley v. State, 486 So.2d 578, 583 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); Dufour v. State, 495 So.2d 154, 160 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987). Although it was error to admit those portions of the taped statement that contained information that was not elicited during the trial testimony, on this record, any error was harmless beyond a reasonable doubt. Alvin v. State, 548 So.2d at 1114.
Jackson's next claim deals with a number of comments by the trial court that Jackson contends deprived him of a fair trial. A similar claim was urged and rejected in Jackson's prior appeal to this Court. See 545 So.2d at 264. With the exception of an inadvertent reference to a charge of which Jackson previously had been acquitted, none of the allegedly improper comments were challenged at trial and therefore are not preserved for our review. Pope v. Wainwright, 496 So.2d 798 (Fla. 1986), cert. denied, 480 U.S. 951, *108 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). Moreover, a review of the record reveals that the comments complained of in no way deprived Jackson of a fair trial. Finally, we agree that the trial court's inadvertent instruction to the jury on the charge of kidnapping Karen Jackson was improper because Jackson had previously been acquitted of that offense. However, we find the curative instruction to disregard that count was sufficient to dispel any harm.
We find no merit to Jackson's claim that he was restricted in the presentation of his defense.[3] Likewise, we find no merit to his claim that the cumulative effect of various trial court rulings entitles him to a new trial.[4]
Although Jackson does not challenge the sufficiency of the evidence, our review of the record reveals substantial competent evidence to support his convictions.

SENTENCING PHASE
Next, we turn to the penalty phase of the trial. In connection with the override sentences, the trial court found the following three aggravating factors applied: 1) the murders were committed during a kidnapping; 2) the murders were heinous, atrocious, or cruel; and 3) the murders were committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Section 921.141(5)(d), (h), (i), Florida Statutes (1989). The court further found that the factors of 1) the defendant knowingly created a great risk of death to many people; and 2) the murders were committed for the purpose of avoiding a lawful arrest "may well apply." Section 921.141(5)(c), (e), Florida Statutes (1989). In mitigation, the court found: 1) Jackson had no significant history of prior criminal activity, section 921.141(6)(a), Florida Statutes (1989); 2) Jackson had a good upbringing and no serious problems with the law; and 3) Jackson had led an exemplary life, was a good son, and had been helpful to his friends, the Bentleys, who testified on his behalf.
In his challenge to the death penalty, Jackson raises numerous issues, several of which we find have merit. First, we agree that the aggravating factors of 1) knowingly created a great risk of death to many persons and 2) the murders were committed to avoid or prevent a lawful arrest, which the trial court found "may well apply," were not proven beyond a reasonable doubt.
In support of the aggravating factor of knowingly creating a great risk of death to many, the trial court found:
After leaving an automobile fully aflame, the defendant had no way of knowing, or caring, how many police officers, medical personnel, and/or firemen would respond *109 to the scene. Had the fireman reached the fuel tanks, an explosion may well have created a risk of death to many persons.
The term "great risk" as used in section 921.141(5)(c), Florida Statutes (1989), means more than a mere possibility; it means a likelihood or high probability of death to many people. Scull v. State, 533 So.2d 1137, 1141 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989); King v. State, 514 So.2d 354, 360 (Fla. 1987), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); Kampff v. State, 371 So.2d 1007, 1009 (Fla. 1979). Therefore, the fact that the fire might have caused an explosion which might have killed those responding to the fire is insufficient to support this aggravating factor. Cf. Welty v. State, 402 So.2d 1159 (Fla. 1981) (setting fire to condominium when six elderly people were asleep in other units created a great risk of death to many persons).
There also was insufficient evidence that the murders of the children were committed to avoid or prevent lawful arrest.
In applying this factor where the victim is not a law enforcement officer, we have required that there be strong proof of the defendant's motive, Riley v. State, 366 So.2d 19 (Fla. 1978), and that it be clearly shown that the dominant or only motive for the murder was the elimination of the witness. Bates v. State, 465 So.2d 490 (Fla. 1985); Oats v. State, 446 So.2d 90 (Fla. 1984). We have also held that the mere fact that the victim knew and could have identified his assailant is insufficient to prove intent to kill to avoid lawful arrest. Caruthers v. State, 465 So.2d 496 (Fla. 1985); Rembert v. State, 445 So.2d 337 (Fla. 1984); Riley.

Perry v. State, 522 So.2d 817, 820 (Fla. 1988). There is no direct evidence of Jackson's motive for killing the two children, and the circumstantial evidence was insufficient to prove that Jackson killed the children to eliminate them as witnesses.
Next, we turn to those aggravating factors that were found to be clearly applicable. We agree with Jackson that the trial court's finding that the homicides of the children were committed in a cold, calculated, and premeditated manner was not proven beyond a reasonable doubt. Evidence of the heightened level of premeditation necessary to support this factor is lacking. On this record, it cannot be said that there was "a careful plan or prearranged design" to kill the children. Holton v. State, 573 So.2d 284, 292 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). There is no reason to conclude that, even if Jackson did intend to burn the children alive, this decision was anything but an afterthought. Accordingly, only the factors of 1) the murder was committed during a kidnapping and 2) the murder was especially heinous, atrocious, or cruel were proven beyond a reasonable doubt.
Because we agree with Jackson's next claim that the jury override was improper, we need not address the remaining challenges to the death sentences.[5] A jury override will not be sustained unless the facts suggesting the sentence of death are "so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). Hence, where a jury's recommendation is reasonable, an override is improper. Wright v. State, 586 So.2d 1024, 1031 (Fla. 1991); Harmon v. State, 527 So.2d 182, 189 (Fla. 1988); Ferry v. State, 507 So.2d 1373, 1376 (Fla. 1987).
We agree that there was a reasonable basis for the jury's recommendation in this case. Not only were there a number of mitigating factors acknowledged by the trial court that could have served as a reasonable basis for the recommendation, the jury could have found that Jackson believed the children were already dead when he set the fire. The testimony that Livingston had the only gun, that at least five shots were *110 heard, and that the adults had been shot six times supports a finding that Jackson's only motive for igniting the car was to dispose of the bodies. This conclusion is in accord with the jury's finding of felony rather than premeditated murder.
The fact that Jackson may not have been aware that the children were alive together with the fact that he had no significant history of prior criminal activity, had a good upbringing, had no serious problems with the law, and had led an exemplary life prior to this incident clearly serve as a reasonable basis for the jury's recommendation. Moreover, the disparate treatment accorded Livingston, who the jury could have found was equally culpable, also may have served as a reasonable basis for the recommendation. Fuente v. State, 549 So.2d 652 (Fla. 1989) (disparate treatment of equally culpable co-perpetrator may serve a reasonable basis for recommendation); McCampbell v. State, 421 So.2d 1072 (Fla. 1982) (same). Accordingly, because there was a reasonable basis for the recommendation, we vacate the death sentence.
Finally, we agree that the sentences for the kidnapping convictions must be vacated because guidelines scoresheets were not prepared in accordance with Florida Rule of Criminal Procedure 3.701(d)(1). See Holton, 573 So.2d at 290. On remand, guidelines scoresheets must be prepared and considered by the trial court prior to resentencing.
Accordingly, we affirm the first-degree murder convictions and the life sentences imposed in connection with the murders of the three adults. We also affirm the kidnapping convictions but remand for resentencing as to those offenses. Finally, we vacate the death sentences and remand for imposition of life sentences without possibility of parole for twenty-five years.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion, in which HARDING, J., concurs.
GRIMES, Justice, concurring in part and dissenting in part.
While I agree with all other aspects of the majority opinion, I would uphold the sentences of death for the murders of the two Manuel children.
At the outset, I believe the evidence was sufficient to support the finding of the aggravating circumstance that the homicides of the children were committed in a cold, calculated, and premeditated manner. There could have been no purpose for taking the children, aged fourteen months and four years, with him in the truck if he did not intend to kill them. The majority's suggestion that "even if Jackson did intend to burn the children alive, this decision was ... an afterthought" is belied by the fact that Jackson put a can of gasoline in his truck before he abducted the victims. Majority op. at 109. It is clear that Jackson planned the killings from the beginning.
With three valid aggravating circumstances[6] balanced against minimal mitigating circumstances and no mental mitigating evidence, the override of the jury recommendation with respect to these two out of the five killings was legally justified. The majority's concern that the jury may have been recognizing the disparate treatment accorded Livingston is unwarranted. It was Jackson who precipitated the entire episode because of his dispute with Karen. Livingston did not even know the victims. It was Jackson who gave the orders, Jackson who drove the truck, and Jackson who selected the car in which the victims were placed. While there was a dispute over whether Jackson or Livingston shot the adults, the children were not shot. The children died of smoke and soot inhalation, and it was Jackson who set fire to the car. *111 The judgments of death should be affirmed.
HARDING, J., concurs.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
[2] Section 90.801(2)(b), Florida Statutes (1989), excludes from the definition of hearsay the prior consistent statement of a witness who testifies at trial and is subject to cross-examination concerning that statement when the statement is offered to "rebut an express or implied charge ... of improper influence, motive, or recent fabrication."
[3] In this claim, Jackson contends that presentation of a defense was restricted by: 1) the trial court's refusal to allow Karen Jackson to read to the jury letters she had written the defendant that had been entered into evidence and excerpts of which had been published; 2) a trial court ruling that effectively eliminated a defense witness; 3) the trial court's refusal to allow inquiry into whether a police officer knew of the previous arrest of Larry Finney and to allow defense counsel to impeach Officer Schlein regarding previous disciplinary proceedings; 4) the court's refusal to declare Karen Jackson a hostile witness; 5) the court's refusal to allow the defense to elicit from Aubrey Livingston the fact he was on probation for a drug charge; and 6) the trial court's restriction of impeachment of Livingston.
[4] The assignments of error include: 1) the trial court erred by failing to grant Jackson's pro se motion for a continuance; 2) the trial court erred by restricting the impeachment of Officer Schlein regarding disciplinary proceedings; 3) the trial court erred by refusing to allow Jackson to act as co-counsel; 4) the trial court improperly intimidated and hindered the defense; 5) the trial court read count XI, charging Jackson with kidnapping Karen Jackson; 6) the trial court erred by allowing the admission of extremely gruesome and inflammatory photographs of the victims; 7) the trial court erred by allowing testimony regarding problems between Jackson and his wife; 8) various comments by the prosecutor during closing argument deprived Jackson of a fair trial; 9) the trial court erred by failing to admonish the jury or grant a mistrial when state witness Shirley Jackson stated that she was sick of coming to court; 10) the trial court erred by failing to declare Karen Jackson a hostile witness and by effectively preventing Jackson from calling a defense witness; and 11) the trial court erred by failing to dismiss the charges against him on double jeopardy grounds.
[5] The remaining challenges are: 1) the trial court failed to consider certain mitigating factors; and 2) death is not proportionately warranted in this case.
[6] The trial judge could have found a fourth in that the other murder convictions supported the aggravating factor that Jackson was previously convicted of another capital felony involving the use of violence to the person. Wasko v. State, 505 So.2d 1314 (Fla. 1987).