824 So.2d 298 (2002)
CHARLOTTE COUNTY, Florida, Petitioner,
v.
IMC-PHOSPHATES COMPANY; Florida Department of Environmental Protection; Manasota-88, Inc.; Peace River/Manasota Regional Water Supply Authority; Environmental Confederation of Southwest Florida; Lee County; Sarasota County; DeSoto Citizens Against Pollution, Inc.; Alan Behrens; and Joseph Fernandez, Respondents.
No. 1D02-1366.
District Court of Appeal of Florida, First District.
August 22, 2002.
*299 Edward P. de la Parte, Jr., David M. Caldevilla and Vivian Arenas of de la Parte & Gilbert, Tampa; Martha Burton and Renee Francis Lee, Charlotte County Attorney's Office, Port Charlotte, for petitioner.
Steve L. Brannock of Holland & Knight, Tampa, Roger W. Sims of Holland & Knight, Orlando, Susan L. Stephens of Holland & Knight, Tallahassee, and Patricia Petruff of Dye, Deitrich, Prather, Petruff & St. Paul, Bradenton, for respondent IMC-Phosphates Company.
Teri Donaldson, General Counsel, Maureen M. Malvern, Senior Assistant General Counsel and Betsy Hewitt, Deputy General Counsel, Tallahassee, for respondent State of Florida, Department of Environmental Protection.
Aliki Moncrief, Earth Justice Legal Defense Fund, Tallahassee, for respondents Manasota-88 and Environmental Confederation of Southwest Florida.
Douglas Manson and David Pearce of Carey, O'Malley, Whitaker & Manson, Tampa, for respondent Peace River/Manasota Regional Water Supply Authority.
Jorge L. Fernandez, County Attorney, and Gary K. Oldehoff, Assistant County Attorney, Sarasota, for respondent Sarasota County.
James G. Yaeger, Lee County Attorney, and Thomas L. Wright, Assistant County Attorney, Fort Myers, for respondent Lee County.
Alan R. Behrens, President, Arcadia, for respondents DeSoto Citizens Against Pollution, Inc., and Joseph Fernandez.
WOLF, J.
Charlotte County petitions this court for a writ of prohibition, seeking review of an order of David Struhs, as Secretary of the *300 Florida Department of Environmental Protection (DEP), which denied the county's motion for disqualification.[1] We conclude that the county's motion was facially sufficient and should have been granted; therefore, we grant the petition for writ of prohibition and quash the order denying the motion.
IMC-Phosphates Company applied to DEP for an environmental resource permit to conduct phosphate mining activities on property known as the Manson Jenkins tract. DEP announced its intention to issue the permit, and Charlotte County and others opposed to the mining petitioned for a formal administrative hearing pursuant to sections 120.569 and 120.57, Florida Statutes. After a four-week hearing, an Administrative Law Judge (ALJ) issued a 117-page order which recommended that the permit be issued. On that same day, Secretary Struhs issued the following statement:
We have felt all along that our actions were fully consistent with state laws and Department rules. The public can feel comforted in the knowledge that a totally impartial arbiter has found that the will of their elected representatives is being carried out by the executive branch. The professionals at DEP have dedicated their careers to protecting the environment and their good-faith efforts have been affirmed. At the same time, we constantly look at ways to do better in all areas. As we pledged to the Chairman of the House Natural Resources and Environmental Protection Committee, Rep. Harrington, an internal review of the phosphate mining process is ongoing. With the guidance now provided by Judge Stampelos, that review can now be targeted and accelerated. In the end, we hope to have a process that will serve the public even better.
Charlotte County moved for Secretary Struhs' disqualification based on this statement, arguing that it reasonably believed that it could not receive a fair and impartial hearing from the agency head on its exceptions to the recommended order. When the motion was denied, the county filed a petition for writ of prohibition which we now have for review.
Section 120.665, Florida Statutes, provides for the disqualification of an agency head for bias, prejudice, or interest. There is no claim that Secretary Struhs has an interest in the litigation, but the petitioner alleges, and we agree, that its motion made a legally sufficient showing of bias or prejudice. The question presented is whether the facts alleged would prompt a reasonably prudent person to fear that they will not obtain a fair and impartial hearing. Department of Agriculture v. Broward County, 810 So.2d 1056, 1058 (Fla. 1st DCA 2002). It is not a question of how the judge actually feels, but what feeling resides in the movant's mind and the basis for such feeling. Id. The judge may not pass on the truth of the allegations of fact, and countervailing evidence is not admissible. Id. at 1059.
We recognize, of course, that an agency head may serve investigative, prosecutorial, and adjudicative roles in the same dispute, and that this blending of roles does not, in and of itself, create an unconstitutional risk of bias. See Bay Bank & Trust v. Lewis, 634 So.2d 672, 675 (Fla. 1st DCA 1994). Nevertheless, an impartial decision-maker is a basic component *301 of minimum due process in an administrative proceeding. See Cherry Communications, Inc. v. Deason, 652 So.2d 803, 804-805 (Fla.1995). Therefore, in any motion to recuse the head of an administrative agency, the practical recognition of the numerous roles played by the agency as well as the agency head (investigator, prosecutor, adjudicator, and political spokesman) must be weighed against a reasonable fear on the part of the movant that it will not receive a fair and impartial hearing.
The timing and content of Secretary Struhs' statements are of particular significance to our conclusion that Charlotte County is entitled to have the secretary recused. At the time the statements in question were made, the secretary was not acting in the role of investigator, prosecutor, or a person responsible for determining probable cause. The statement was made on the day the ALJ issued the recommended order, and the statement specifically addressed the merits of the ultimate decision: whether the agency had followed the applicable law in granting the permit. The statement given at this time was not mandated as part of any of the secretary's statutory duties, but can only be classified as a statement made as part of his political duties. A gratuitous statement such as this is far different from an agency making a statutorily mandated preliminary determination involving different standards of proof and persuasion than those involved in the ultimate decision.
Pursuant to Florida's statutory scheme, after the recommended order issued, the secretary assumed the role of adjudicator of the legality of the hearing officer's action. In this role, an agency head does not have as much discretion as a trial judge; rather, the agency head sits in a role similar to an appellate judge, determining whether the findings of fact are supported by competent substantial evidence and overturning incorrect applications of law when it explains its reasons for doing so.[2] The timing and content of Secretary Struhs' statement were inconsistent with his role of adjudicator.
Issuing the statement on the same day that the ALJ issued his recommended order could lead a reasonable person to conclude that, for all practical purposes, the agency head regarded the issuance of the recommended order as the conclusion of the litigation, with the forthcoming final order a mere formality. The agency head's statement went to the very heart of the issue which would be resolved in considering exceptions and issuing a final order whether department staff correctly concluded that the permit should issue. In this case, the agency head's perceived need to act in his political capacity was outweighed by the need for parties to believe they are involved in a fair process.[3] These factors, along with others not discussed in this opinion, compel us to find that the motion was legally sufficient and should have been granted.
The petition for writ of prohibition is granted. Secretary Struhs' order denying the motion for disqualification is quashed, *302 and the cause is remanded with directions that the motion be granted.
PETITION GRANTED.
BENTON, J., CONCURS, and KAHN, J., DISSENTS WITH OPINION.
KAHN, J., dissenting.
In an act with no precedent in Florida case law, the majority issues a writ of prohibition stripping the Secretary of the Florida Department of Environmental Protection (DEP) of his duty and obligation to serve as the agency head in review of the recommended order issued by an administrative law judge in a regulatory matter. I would deny this dramatic remedy. Respectfully, the majority has superimposed the standard for disqualification of a judge (including an administrative law judge) upon the distinct statutory standard that controls disqualification of an agency head. Moreover, even under the standards applied to judges in cases where judges are accused of preliminary comment on the merits of a case, the present facts would not meet the disqualification standard.
The following comments from the Secretary's press release in question apparently cause the majority concern:
We have felt all along that our actions were fully consistent with state laws and Department rules.... The professionals at DEP have dedicated their careers to protecting the environment and their good faith efforts have been affirmed.
The question before us is not whether the Secretary, as a practical matter, would have been better advised to reserve these remarks for the conclusion of the case. The question is, rather, whether this is one of those rare instances where a court should intervene in the workings of the administrative process within the executive branch of government. Nothing in the press release expresses a bias or prejudice against the petitioner.

I.
The statute upon which disqualification is based, section 120.665(1), Florida Statutes (2001), does not set forth the same standard as that applicable to judges in Florida. Although providing for disqualification on the basis of bias, prejudice, or interest, the statute, following its 1983 amendment, rejects the former provision calling for disqualification for "other causes for which a judge may be recused." Ch. 83-329, § 2, at 2175, Laws of Fla. This court has recognized as much in the only proceeding before today in which we have considered disqualification of an agency head. See Bay Bank & Trust Co. v. Lewis, 634 So.2d 672 (Fla. 1st DCA 1994).
In Bay Bank, this court refused to disqualify the state comptroller from ruling on matters arising out of administrative complaints filed against a bank and its directors. See 634 So.2d at 678-79. In the face of allegations that the comptroller had "personal involvement" in certain administrative decisions involving the bank and its directors, the comptroller declined to disqualify himself and this court affirmed. Id. at 675. This court relied upon its earlier decision in Winslow v. Department of Professional & Occupational Regulation, 348 So.2d 352 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 716 (Fla. 1978), and the leading United States Supreme Court decision of Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). See Bay Bank, 634 So.2d at 679. In a holding binding upon us today, the Bay Bank court concluded, "[T]he standards for disqualifying an agency head differ from the standards for disqualifying a judge. This change gives recognition to the fact that agency heads have significantly different functions and duties than *303 do judges." Id. The court went on to observe, "The agency head necessarily serves as investigator, prosecutor, and adjudicator in disciplinary proceedings, and Withrow and Winslow clearly hold that this procedure is neither violative of due process nor an adequate ground to disqualify the agency head." Id.
Withrow involved Wisconsin's statutory procedure for investigating and regulating physicians. See 421 U.S. at 37-38, 95 S.Ct. 1456. Under the statutes, the Wisconsin Medical Examining Board had responsibility for initially conducting an investigation, and then, if warranted, moving on "from purely investigative proceedings to a hearing aimed at deciding whether suspension of appellee's [medical] license was appropriate...." Id. at 41, 95 S.Ct. 1456. The physician, Dr. Duane Larkin, brought an action in the United States District Court seeking a ruling as to whether the authority given to the Board to investigate physicians, present charges, as well as rule on those charges and impose punishment, violated Dr. Larkin's due process rights. See id. In analyzing the question, the Supreme Court immediately conceded, "[A] `fair trial in a fair tribunal is a basic requirement of due process.'" Id. at 47, 95 S.Ct. 1456 (quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). The question in Withrow, therefore, concerned whether the constitutional guarantee of due process would be violated in a situation where the Board investigated a complaint, ultimately concluding that Dr. Larkin had engaged in certain prohibited conduct, and thereafter, as characterized by the lower court decision, sought "`to suspend Dr. Larkin's license at its own contested hearing on charges evolving from its own investigation....'" Id. at 42, 95 S.Ct. 1456 (quoting Larkin v. Withrow, 368 F.Supp. 796, 797 (E.D.Wis.1973)). The Supreme Court noted that a "probability of actual bias" would not be "constitutionally tolerable." Id. at 47, 95 S.Ct. 1456. Nevertheless,
The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
Id.
The present case obviously does not involve an allegation that Secretary Struhs both conducted the investigation and adjudication functions. Instead, the allegation is that Secretary Struhs has irrevocably expressed his bias by issuing the press release. The situation is nevertheless analogous, from an analytic prospective, to Withrow. Here, the Secretary expressed confidence in the agency employees and in their ability to follow the applicable laws and rules. In Withrow, the agency, as a result of its investigation, expressed its belief, through a probable-cause finding, that Larkin had committed certain prohibited acts that could lead to the suspension of his medical license in Wisconsin. In both of these situations, a reviewing court must recognize the distinction between the head of an administrative agency and a person who serves solely as a judge.
At oral argument, counsel for petitioner Charlotte County posed the rhetorical question of whether a judge who issued a press release on the merits of the case *304 would then be subject to removal. This very proposition demonstrates almost conclusively the difference in the functions served by judges and by executive branch administrators. Judges, of course, are prohibited from making public comment about pending or impending proceedings except for "public statements in the course of their official duties or [explanation] for public information [of] the procedures of the court." Fla.Code of Jud. Conduct, Canon 3B(9). Judges are simply not involved in policymaking. Although judges may have certain administrative responsibilities, these responsibilities have to do with the procedural aspects of the court and not with the policies that will emanate from court decisions. Of necessity, then, the restrictions upon comments made by judges concerning pending court matters must be quite pervasive.
An agency head such as Secretary Struhs is not responsible, in the course of carrying out his duties under the Administrative Procedure Act, for making determinations of disputed factual matters. See § 120.569(2)(a), Fla. Stat. (2001) (explaining that when an agency requests an ALJ from the Division of Administrative Hearings, the Division assigns an ALJ and "[t]he referring agency shall take no further action with respect to a proceeding under s. 120.57(1), except as a party litigant, as long as the division has jurisdiction over the proceeding under s. 120.57(1).") That responsibility falls, in adjudicatory matters, to administrative law judges employed by the Division of Administrative Hearings. See § 120.57(1)(k), Fla. Stat. (2001). Recommended orders, including findings of fact, are submitted by the administrative law judge to the agency head. See id. At that point, the agency head does not enjoy anything near the discretion that applies to judges. Specifically, if an agency chooses to reject or modify a conclusion of law or interpretation of administrative rule, "the agency must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified." § 120.57(1)(l), Fla. Stat. (2001). The rule concerning rejection or modifications of findings of fact is much more rigid:
The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.
Id.
The role of an agency head diverges in almost every respect from that of a judge. Accordingly, the test that should apply on a motion for disqualification of an agency head is the same test applied by the United States Supreme Court in Withrow: Has the agency head somehow deprived the litigant of the right to due process under the state and federal constitutions? In the present case, Secretary Struhs' statement of approval in support of earlier actions of agency personnel does not even come close to the constitutional standard required by law.
Although not a disqualification case, the leading Florida case that applies this standard is Ridgewood Properties, Inc. v. Department of Community Affairs, 562 So.2d 322 (Fla.1990). In that case, the Florida Supreme Court concluded "Ridgewood's rights were violated under the due process clauses of our state and federal constitutions." Id. at 324. The facts in *305 Ridgewood, however, are out of a completely different verse and chapter than those presently before this court. In Ridgewood, the Department of Community Affairs entered a preliminary ruling that a development contemplated by Ridgewood would require approval by the Department as a development of regional impact. See id. at 322. Ridgewood then sought an administrative hearing in order to argue that it was exempt from such a procedure. See id. At that hearing the Department relied entirely upon the testimony of one expert witness, that being the secretary of the Department. See id. at 323. In disapproving such a procedure, the supreme court noted that the secretary, in order to approve the hearing officer's findings of fact and conclusions of law, would have "to conclude that his own testimony was competent and substantial." Id. This procedure was so highly unusual that the Florida Supreme Court simply could not approve it. See id. at 323-24. Nevertheless, the court reiterated the rule that should inform the present analysis: "[T]he administrative context does not and need not match the judicial model, and administrative proceedings need not contain all the formalities of judicial proceedings." Id. at 323. Indeed, the Legislature has provided that the causes for which a judge must be disqualified do not apply to administrative agency heads. See Bay Bank, 634 So.2d at 679. The test applicable to petitioner Charlotte County's motion to disqualify is whether Charlotte County has been denied its right to due process. See Withrow, 421 U.S. at 47, 95 S.Ct. 1456; Ridgewood Props., Inc., 562 So.2d at 323-24. Under the due process standard, Charlotte County's allegations fall short.
Department of Agriculture and Consumer Services v. Broward County, 810 So.2d 1056 (Fla. 1st DCA 2002) does not support the majority's view. This is necessarily so because Department of Agriculture involved disqualification of an administrative law judge who received an ex parte communication from a pro se individual who sought to appear as an intervener. The test applied in Department of Agriculture was, as this court stated, the same test applicable to cases involving disqualification of a judge. See Dep't of Agric., 810 So.2d at 1058. Accordingly, the court correctly noted, "the test for determining the legal sufficiency of a motion for disqualification is whether the facts alleged (which must be taken as true) would prompt a reasonably prudent person to fear that he or she could not get a fair and impartial trial." Id. This is the test generally applicable to trial judges, and under both Ridgewood Properties and Bay Bank, not the test applicable to an agency head. A reading of Department of Agriculture will not reveal any citation to, or reliance upon, the statute we apply today, namely, section 120.665(1), Florida Statutes (2001).

II.
Even under the rules applicable to Florida judges, the writ of prohibition still should not issue. The case law demonstrates that preliminary comment on the merits of a pending matter does not, in and of itself, require disqualification.
In conducting this analysis, it is important to initially note that, under the statutory formulation, only the questions of prejudice or bias are before this court. Although the statute calls for disqualification in a case of "interest," and although Charlotte County has quite clearly argued that Secretary Struhs is "interested," such is not the case. The type of interest referred to in disqualification statutes is a property interest. See Sauls v. Freeman, 24 Fla. 209, 4 So. 525 (1888). Secretary Struhs'"interest" in this case as the head of DEP would no more disqualify him here *306 than it would in any other adjudicatory proceeding that ultimately comes to his desk. He is also not disqualified based upon prejudice or bias.
Secretary Struhs' comments expressed his belief that the Department's actions in noticing its intent to grant a permit to IMC were fully consistent with state laws and Department rules. Although for purposes of the present analysis, I will assume that this is in the nature of a preliminary comment on the merits of the case, it is almost impossible for someone operating in the real world to be shocked or surprised by the comment. Viewed on its own merits, this comment by the Secretary, after having received a recommended order suggesting that the permit indeed be granted, could not have possibly prejudiced Charlotte County any more than did the original notice of intent to issue the permit. Both the press release and the notice of intent clearly tell Charlotte County, as well as anyone else who is listening, that the Department believes that its original permit to IMC was legally warranted.
Under the rules applicable to judicial disqualification, "[a] motion to disqualify must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy." Jackson v. State, 599 So.2d 103, 107 (Fla.1992). "[T]he mere fact that a judge has previously heard the evidence [is not] a legally sufficient basis for recusal." Id. "Likewise, allegations that the trial judge had formed a fixed opinion of the defendant's guilt, even where it is alleged that the judge discussed his opinion with others, is generally legally insufficient to mandate disqualification." Id. The case law offers specific examples.
For instance, in Mobil v. Trask, a workers' compensation judge (deputy commissioner) noted, at an early stage of a hearing that he did not see how the employer "can't find this accident compensable." 463 So.2d 389, 390 (Fla. 1st DCA 1985). This court denied a writ of prohibition observing that such a remark did not "indicate that the deputy had made a final decision on the issue of compensability." Id. at 391. Similarly, in the present case, Secretary Struhs did not suggest how he would rule on exceptions to the recommended order; instead, he commended Department personnel for having followed state law, as recognized in the recommended order filed by the administrative law judge: "The public can feel comforted in the knowledge that a totally impartial arbiter has found that the will of their elected representatives is being carried out by the executive branch." Such an expression by the Secretary does not in any way indicate that he will refuse to consider, or has considered and rejected summarily, the arguments of Charlotte County. It merely reiterates what everyone already knew-that the DEP is not opposed to permitting the phosphate mine proposed by IMC.
In another failed attempt to avoid a particular judge, this court found that a judge, who had commented publicly on the need of the judge's county to erect more jail facilities, would not be disqualified in a suit challenging voter approval of a local option sales tax that would be used to fund construction of new jail facilities. See People Against Tax Revenue Mismanagement, Inc. v. Reynolds, 571 So.2d 493 (Fla. 1st DCA 1990). This court found that although the trial judge's comments might advocate community awareness of the need for additional jail facilities, these comments would not place a reasonably prudent person in fear of not receiving a fair and impartial trial. See id. at 497.
Sometimes judges have to make preliminary factual findings that would perhaps strongly suggest the judge's view of the case. Nevertheless, in these situations, *307 judges are not disqualified on the basis of bias or prejudice. For example, a judge who grants a preliminary injunction in a civil action, despite the necessity of making findings of fact on ultimate issues in the case, will not be disqualified from hearing the remainder of the case. See, e.g., United States v. Chavis, 772 F.2d 100 (5th Cir.1985); Prefer v. PharmNetRx, L.L.C., 18 P.3d 844 (Colo.Ct.App.2000). As put bluntly in an early decision, "[n]obody imagines that the judge ... who grants the preliminary injunction would be thereby disqualified to hear the case at final hearing on pleadings and proof. Such a thing was never heard of." Walter v. Ward, 14 D.C. 65 (1884).
Where a judge takes a plea, and is thereby involved in the plea bargaining process, the judge will not be subject to later recusal in the event that the plea is not completed or is withdrawn. See State v. Warner, 762 So.2d 507 (Fla.2000). Similarly, "[t]here is no inherent reason to deny power to a judicial officer to review his own judgments, even though they be final and decide the very merits of the cause; at common law, this was permissible." Henry v. Hodges, 171 F.2d 401, 402 (2d Cir.1948). Here DEP has taken a particular view of this dispute from the outset. Secretary Struhs agreed that DEP's view was supportable by fact and law. The comment at issue does not show the type of bias that must lead to disqualification.

III.
The court's holding here must necessarily subsume a finding that Charlotte County has suffered a denial of due process. If such is the case, then this is a far different species of due process than that examined by our supreme court in Ridgewood Properties or by the United States Supreme Court in Withrow. It is a species of due process that has been created today and which may well come back to haunt us in the form of forum shopping in a broad range of administrative cases. I do not join in the majority's view, and I would decline to issue the writ.
NOTES
[1] We have jurisdiction. See Bay Bank & Trust Co. v. Lewis, 634 So.2d 672 (Fla. 1st DCA 1994). We apply a de novo standard of review to Secretary Struhs' decision on the motion to disqualify. See Department of Agriculture and Consumer Services v. Broward County, 810 So.2d 1056 (Fla. 1st DCA 2002).
[2] While the standards for disqualification of an appellate judge are less stringent than a trial judge, no one would seriously argue that an appellate judge who makes a public statement on the merits of the case prior to the issuance of an opinion should not be recused. In re: Inquiry Concerning Judge Richard Frank, 753 So.2d 1228 (Fla.2000).
[3] While a person might argue that the nature of the process of having an agency head review the work of his or her own agency is inherently unfair, present case law has upheld the statutory framework, and we can only deal with statements indicating bias in a particular case.