IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BISCAYNE BAY PILOTS, INC.,

Petitioner,

v.

FLORIDA CARIBBEAN-CRUISE
ASSOCIATION,

Respondent.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-3974

Opinion filed April 8, 2015.

Petition for Writ of Prohibition -- Original jurisdiction.

Donna E. Blanton of Radey Law Firm, Tallahassee; Robert Peltz of The Peltz Law Firm, Miami, for Petitioner.

Thomas F. Panza of Panza, Maurer & Maynard, P.A, Ft. Lauderdale, for Respondent Florida Caribbean-Cruise Association.

Pamela Jo Bondi, Attorney General, and Marlene K. Stern, Assistant Attorney General, Tallahassee, for Pilotage Rate Review Committee.

WETHERELL, J.

Biscayne Bay Pilots, Inc. (Pilots) filed a petition for writ of prohibition to review the order entered by the Pilotage Rate Review Committee (Committee) denying the

Pilots' motion to disqualify two members of the Committee from participating in the proceeding initiated by the Florida Caribbean-Cruise Association (Cruise Association) to reduce certain pilotage rates. We deny the petition for the reasons that follow.

### *Factual and Procedural Background*

The Committee is a collegial body comprised of seven members of the Board of Pilot Commissioners, including cruise line executives Thomas Burke and Enrique Miguez.[1] The Committee is an "agency head" for purposes of the Administrative Procedure Act (APA) because it is responsible for taking final agency action on applications to change pilotage rates. See § 310.151(4)(a), Fla. Stat. (2014).

The Cruise Association[2] initiated the underlying proceeding by filing an application with the Committee for a 25% reduction in the pilotage rates for commercial passenger cruise ships in PortMiami. The Committee investigated the application and set the matter for a public hearing. See § 310.151(3), Fla. Stat. (2014); Fla. Admin. Code R. 61G14-22.007.

---

[1] Commissioner Burke is the vice president of risk management for Royal Caribbean cruise line, and Commissioner Miguez is the vice president and deputy general counsel for Carnival cruise line.

[2] Although the Cruise Association is the named party in the underlying proceeding, the cruise lines that are members of the association (including Royal Caribbean and Carnival) are the de facto parties because section 310.151(2), Florida Statutes, only allows groups whose "substantial interests are directly affected by the rates set by the committee" to apply for a rate change and Florida Homebuilders Association v. Department of Labor and Employment Security, 412 So. 2d 351 (Fla. 1982), and its progeny make clear that a trade association's standing to participate in an administrative proceeding is based on the fact that its members' substantial interests

Prior to the public hearing, the Pilots filed a motion to disqualify Commissioners Burke and Miguez from participating in the proceeding on the Cruise Association's application for a rate reduction. The legal basis for the motion was section 120.665, Florida Statutes, which provides in pertinent part:

> any individual serving alone or with others as an agency head may be disqualified from serving in an agency proceeding for bias, prejudice, or interest when any party to the agency proceeding shows just cause by a suggestion filed within a reasonable period of time prior to the agency proceeding. If the disqualified individual was appointed, the appointing power may appoint a substitute to serve in the matter from which the individual is disqualified. . . . However, if a quorum remains after the individual is disqualified, it shall not be necessary to appoint a substitute.

§ 120.665(1), Fla. Stat. (2014).

The motion asserted that Commissioners Burke and Miguez could not be fair and impartial in this proceeding because their employers were members of the party that filed the application for the rate reduction and "[n]o reasonable person would expect [them] to vote against the interests of their employers . . . in a proceeding that has the potential of saving their employers substantial amounts of money." The Cruise Association filed a response in opposition to the motion, arguing that the motion was legally insufficient to warrant the disqualification of Commissioners Burke and Miguez and asserting that the motion was merely an attempt to "end-run around section 310.151's clear requirement[3] that the [Committee] be comprised of balanced

---

are being affected by the agency action at issue.

[3] See § 310.151(1)(b), Fla. Stat. (2014) (providing that the Committee is to be

representation from the piloting <u>and</u> maritime industry." (emphasis in original).

The Committee considered the motion to disqualify at the outset of the public hearing on the Cruise Association's application. After the parties presented oral argument, the commissioner who would later move to deny the motion to disqualify asked the Committee's legal counsel if the Committee had the authority to order its members to disqualify themselves from this proceeding, and counsel responded that, in his opinion, the Committee did not have the authority to do so.[4] A brief discussion

comprised of two licensed pilots "actively practicing their profession;" two persons "actively involved in a professional or business capacity" in the maritime, marine shipping, or commercial passenger cruise industries; one certified public accountant; and two citizens of the state not involved in piloting or the shipping industry).

[4] The commissioner asked: "In your opinion, does this Committee have the authority to compel . . . a person to recuse themselves?" The Committee's legal counsel responded:

> No, sir. I don't believe you do. I've looked at the statutes. I don't see anything that gives you that authority. I have reviewed 120.665. I will confess that it is a provision that I am not that familiar with. It's hardly ever raised and I've never seen it. And, as [counsel for the Pilots] knows, there's only two cases in the District Courts out there and I've read them.
>
> It's still essentially a case of first impression. But, with regards to the specific authority of this [Committee], I don't believe that you would have the authority to compel an individual member to disqualify themselves. That being said, each member does have the ability to recuse themselves if they believe under these provisions that they cannot give an impartial decision.
>
> But let's address one thing at a time. Authority to compel, no, I don't believe you do. With respect to withdrawal, if the two commissioners wish to do so, fine. If they don't I think it would

followed about the Committee's authority to rule on the motion and, then, the Committee voted unanimously to deny the motion. At no point during the pre-vote discussion amongst the commissioners and the Committee's legal counsel were there any comments about the merits of the motion or its legal sufficiency.

Immediately after the Committee voted to deny the motion, the Committee's legal counsel asked Commissioners Burke and Miguez if they intended to disqualify themselves from this proceeding. Each commissioner responded, "No. I do not."

The Committee then commenced the public hearing on the merits of the Cruise Association's application for a rate reduction. At the conclusion of the public hearing, the Committee voted 4 to 3 (with Commissioners Burke and Miguez in the majority) to approve the 25% rate reduction requested by the Cruise Association. The Committee has not yet reduced this decision to writing.

The Committee entered a written order denying the motion to disqualify several weeks after the public hearing. The order does not articulate the grounds upon which the denial was based. The Pilots promptly sought review of the order in this court by filing a petition for writ of prohibition.

We initially treated the petition as one seeking review of non-final agency action under section 120.68(1), Florida Statutes, but, upon reflection, we conclude that

be great for them to say very quickly they are not going to recuse themselves, assuming that the Committee moves not to compel the recusal.

5

prohibition is the appropriate remedy to review the order in this case. Accordingly, we treat the petition as it was originally filed: as a petition for writ of prohibition.

*Analysis*

The Pilots contend that the Committee denied the motion to disqualify on the merits and that the Committee's ruling was erroneous because the motion made a legally sufficient[5] showing of bias and prejudice under section 120.665. The Committee and the Cruise Association contend that the Committee did not deny the motion on the merits because it correctly recognized that it lacked the authority to disqualify its members. We agree with the Committee and the Cruise Association because even though the order denying the motion to disqualify does not articulate the ground upon which the denial was based, it is clear from the discussion preceding the Committee's vote to deny the motion that the denial was based on the Committee's

---

[5]  The test for legal sufficiency is

> whether the facts alleged would prompt a reasonably prudent person to fear that they would not obtain a fair and impartial hearing. It is not a question of how the [agency head] actually feels, but what feeling resides in the movant's mind and the basis for such feeling. The [agency head] may not pass on the truth of the allegations of fact, and countervailing evidence is not admissible.

Charlotte Cnty. v. IMC-Phosphates Co., 824 So. 2d 298, 300 (Fla. 1st DCA 2002) (citations omitted). See also id. at 301 (explaining that "in any motion to recuse the head of an administrative agency, the practical recognition of the numerous roles played by the agency as well as the agency head (investigator, prosecutor, adjudicator, and political spokesman) must be weighed against a reasonable fear on the part of the

6

view that it did not have the authority to disqualify its members.

Accordingly, our resolution of this case turns on whether the Committee was correct in reasoning that it lacked the authority to rule on the merits of the Pilots' motion to disqualify Commissioners Burke and Miguez. If the Committee's reasoning was correct, then the petition for writ of prohibition is premature because Commissioners Burke and Miguez have not yet[6] entered orders memorializing their decision not to disqualify themselves. But, if we determine that the Committee's reasoning was incorrect, we will then have to determine whether the petition should be denied under the "tipsy coachman" doctrine because the Committee reached the correct result in denying the motion, or whether the petition should be granted because the motion was legally sufficient.

The parties have not cited, nor has our research located any case addressing who has the authority to rule on a motion to disqualify an individual serving on a collegial agency head: the agency head or the individual that is the subject of the motion. The only reported cases applying section 120.665 to agency heads involve motions to disqualify an individual agency head, see Charlotte Cnty., 824 So. 2d at 299-300 (secretary of the Department of Environmental Protection); Bay Bank & Trust Co. v. Lewis, 634 So. 2d 672 (Fla. 1st DCA 1994) (state comptroller), or the entire collegial

---

movant that it will not receive a fair and impartial hearing.").

[6] The Committee's counsel stated at oral argument that written orders memorializing the commissioners' rulings on the motion to disqualify were forthcoming.

7

body serving as the agency head, see Seiden v. Adams, 150 So. 3d 1215 (Fla. 4th DCA 2014) (school board). We did locate one case that involved a motion to disqualify individual members of a school board under the predecessor to section 120.665 (section 120.09, Florida Statutes (1967)), but the issue in that case was whether the school board was an "agency" subject to the APA, not whether the motion should be ruled on by the school board or the individual members whose disqualification was being sought. See State ex rel. Allen v. Bd. of Public Instruction of Broward Cnty., 214 So. 2d 7 (Fla. 4th DCA 1968), approved by 219 So. 2d 430 (Fla. 1969).

Section 120.665 does not provide any guidance on the issue presented in this case. The statute clearly provides that individual members of a collegial agency head "may be disqualified," but it begs the question: by whom?

The uniform rules of procedure for administrative proceedings do not answer the question begged by the statute.[7] The rules state that motions are to be ruled on by the "presiding officer," see Fla. Admin. Code R. 28-106.204(1), but the term "presiding officer" is defined to include both the agency head and a "member thereof." Fla.

_____

[7] We recognize that these rules technically do not apply to the proceedings held by the Committee thus far on the Cruise Association's application, see Fla. Admin. Code R. 28-106.101(2) (stating that rule chapter 28-106 "applies to all proceedings under Chapter 120 except . . . [a]gency investigations . . . preliminary to agency action") (emphasis added); however, it is appropriate to consider these rules in our analysis because section 120.665 prescribes the substantive grounds for disqualifying an agency head or member thereof from "an agency proceeding" (not just the proceedings that take place after preliminary agency action) and we see no reason that the procedure for ruling on a motion to disqualify should be different based on the stage of the

8

Admin. Code R. 28-106.102. Accordingly, although the rules do not necessarily prohibit the collegial agency head from ruling on a motion to disqualify one of its members, the rules likewise do not preclude the individual who is the subject of the motion from ruling on the motion.

In the absence of any clear guidance in the statute, rules, or case law, we cannot say that the Committee erred in determining that it did not have the authority to rule on the merits of the Pilots' motion to disqualify Commissioners Burke and Miguez. Indeed, we agree with the Committee that it did not have such authority because we see no reason for the collegial agency head to have any role in determining whether a motion to disqualify an individual member of the agency head should be granted or denied. Instead, we think the better procedure is for that decision to be made by the individual himself or herself upon review of the legal sufficiency of a timely filed motion challenging the individual's "bias, prejudice, or interest." This procedure is analogous to the procedure followed by appellate judges when ruling on a motion to disqualify: the motion is ruled on by the judge to whom the motion is directed, not the collegial body on which the judge serves. See In re Estate of Carlton, 378 So. 2d 1212, 1216-17 (Fla. 1979). A procedure that allowed the collegial agency head to disqualify one of its members, or overrule the member's decision not to disqualify himself or herself, would undermine collegiality and could infuse politics, voting alliances, or

proceeding in which the motion is filed.

9

other mischief into a decision that should be based solely on an assessment of the motion's legal sufficiency.

Here, Commissioners Burke and Miguez stated in response to an inquiry from the Committee's legal counsel after the Committee's vote on the Pilots' motion to disqualify that they did not intend to disqualify themselves. The commissioners' statements can be construed as their oral rulings on the motion to disqualify, but those rulings have not yet been memorialized in a written order. Without a written order from the individual commissioners, we do not have jurisdiction to review their decisions not to disqualify themselves. See Gregg v. State, 643 So. 2d 106, 107 (Fla. 1st DCA 1994) ("[T]his court has no jurisdiction to review an oral order."); Owens v. State, 579 So. 2d 311, 312 (Fla. 1st DCA 1991) ("An oral pronouncement by the trial court cannot be appealed.").

### *Conclusion*

In sum, for the reasons stated above, the petition for writ of prohibition seeking review of the Committee's order denying the Pilots' motion to disqualify Commissioners Burke and Miguez is denied without prejudice to the Pilots' right to seek review of the written orders entered by the individual commissioners.

DENIED.

SWANSON, J., CONCURS; BENTON, J., CONCURS IN THE JUDGMENT WITH OPINION.

10

BENTON, J., concurring in result.

Whether viewed as a petition for writ of prohibition, or as one seeking review of non-final agency action—the court "initially treated the petition as one seeking review of non-final agency action under section 120.68(1), Florida Statutes," ante p. 5—the rule of decision is that the petition should be denied, unless "review of the final agency decision would not provide an adequate remedy." § 120.68(1), Fla. Stat. (2014). See Sutton v. State, 975 So. 2d 1073, 1076 (Fla. 2008) ("A writ of prohibition is available only where there is no other 'appropriate and adequate legal remedy.'" (citations omitted)). On this basis, I join the judgment of the court, without reaching many of the issues the majority opinion addresses.

As regards the need for appellate review at this juncture, the Pilots' contention is that, even if, on review of final agency action, the reviewing court agrees with them that Commissioners Burke and Miguez should have disqualified themselves, the Commissioners would by then already have been the deciding votes to put in place lower pilotage rates which would remain in place until administrative and judicial proceedings concluded, so that the difference between the current rates and the new rates would be irretrievably lost to them.

They do not argue this point in a vacuum. Before Governor Scott appointed Commissioners Burke and Miguez, the Pilots had moved for disqualification of two other employees of cruise companies that would benefit from a reduction in pilotage

11

fees at the Port of Miami. Board counsel reportedly advised these gentlemen, Commissioners Nielsen and Fox, or "intend[ed] to strongly advise" them, that recusal was in order; which apparently led them to resign from the Board, creating the openings Governor Scott then filled (with two other cruise company employees) shortly before the rate hearing at which Commissioners Burke and Miguez declined to disqualify themselves.

In their petition, the Pilots noted that a preliminary vote had already gone against them and argued:

> If Commissioners Burke and Miguez are permitted to vote on FCCA's pending application, the pilots will be irreparably harmed, as section 310.151(4)(b) requires that any proposed agency action of the Rate Review Committee concerning rates becomes immediately effective, even if the substantially affected party seeks a hearing at the Division of Administrative Hearings ("DOAH").

(Footnote omitted.) The pertinent statutory provisions do call for immediate implementation of rate hikes, but with an important proviso:

> In any administrative proceeding pursuant to this section, the committee's proposed rate determination shall be immediately effective and shall not be stayed during the administrative proceeding, provided that, pending rendition of the committee's final order, the pilot or pilots in the subject port deposit in an interest-bearing account all amounts received which represent the difference between the previous rates and the proposed rates. The pilot or pilots in the subject port shall keep an accurate accounting of all amounts deposited, specifying by whom or on whose behalf such amounts were paid, and shall produce such an

12

accounting upon request of the committee. Upon rendition of the committee's final order:

1. Any amounts deposited in the interest-bearing account which are sustained by the final order shall be paid over to the pilot or pilots in the subject port, including all interest accrued on such funds; and

2. Any amounts deposited which exceed the rates sustained in the committee's final order shall be refunded, with the accrued interest, to those customers from whom the funds were collected. Any funds that are not refunded after diligent effort of the pilot or pilots to do so shall be disbursed by the pilot or pilots as the committee shall direct.

§ 310.151(4)(b), Fla. Stat. (2014) (emphasis added). The agency's interpretation of the statute, as set out in its response to the petition, is reasonable and entitled to deference. The agency takes the position that the statutory prohibition against a stay does not apply in the event of a rate reduction:

Proposed rates only become immediately effective and remain so throughout the administrative proceedings if the pilots deposit the difference between the proposed and existing rates in an interest bearing account. This condition can only be met with a rate increase. . . .

By operation of Section 310.151(4)(b), Florida Statutes, the decreased rates will automatically go into effect upon issuance of the notice of proposed agency action, but could be stayed during administrative proceedings with the filing of a motion for stay. Thus, the [Pilots] can prevent the alleged injury so that it will not persist for the remainder of the administrative proceeding by moving to stay the rate decrease. See § 310.151(4)(b).

The Pilots counter that, given the history of the controversy and the composition of the Pilotage Rate Review Committee (PRRC) and the Board, a stay is not a realistic possibility in the present case.

13

The availability of an appropriate and adequate legal remedy does not, however, turn on speculation of this kind. Only in extraordinary and narrowly defined circumstances, moreover, may judicial relief be had without exhausting administrative remedies. Specific facts must be alleged to show that administrative remedies are inadequate or unavailable to cure agency error. See generally Criterion Ins. Co. v. State, Dep't of Ins., 458 So. 2d 22, 26 (Fla. 1st DCA 1984); Communities Fin. Corp. v. Fla. Dep't of Envtl. Regulation, 416 So. 2d 813, 816 (Fla. 1st DCA 1982); Dep't of Bus. Regulation v. Provende, Inc., 399 So. 2d 1038, 1039-40 (Fla. 3d DCA 1981); State ex rel. Dep't of Gen. Servs. v. Willis, 344 So. 2d 580, 590 (Fla. 1st DCA 1977) ("[S]ome agency errors may be so egregious or devastating that the promised administrative remedy is too little or too late."). The specific facts alleged here are insufficient.

Earlier in this very case, in fact, the PRRC did enter a stay that has so far kept a rate reduction from going into effect. On September 2, 2014, after the PRRC issued its written order on August 27, 2014 denying the Pilots' motion to disqualify Commissioners Burke and Miguez, the Pilots filed not only their petition for a writ of prohibition, but also motions to stay, both with the PRRC and with this court. After we granted a temporary stay pending disposition of the prior motion to stay filed with the PRRC, the PRRC granted the Pilots' motion to stay on October 23, 2014. There is no reason to believe that a similar scenario cannot recur, if necessary.