LEWIS, J.
Port Everglades Pilots Association (“PEPA”) petitions this Court for a writ of prohibition, seeking review of the orders entered by Commissioners Thomas Burke and Enrique Miguez of the Pilotage Rate Review Committee (“Committee”) denying its motion to disqualify them from participating in the proceeding initiated by the Florida-Caribbean Cruise Association (“FCCA”) to reduce pilotage rates. We conclude that the motion to disqualify was legally sufficient and should have been granted. Therefore, we grant the petition for writ of prohibition and quash the orders denying the motion.

Background

Chapter 310, Florida Statutes (2014), governs pilots, piloting, and pilotage in the waters, harbors, and ports of Florida. See § 310.001, Fla. Stat. (2014). Section 310.011, Florida Statutes (2014), creates within the Division of Professions of the Department of Business and Professional Regulation the Board of Pilot Commissioners (“Board”) to “perform such duties and possess and exercise such powers relative to the protection of the waters, harbors, and ports of this state as are prescribed and conferred on it in this chapter.” The Board’s composition is as follows:
The board shall be composed of 10 members, to be appointed by the Governor, as follows: five members shall be licensed state pilots actively practicing their profession; two members shall be actively involved in a professional or business capacity in the maritime industry, marine shipping industry, or commercial passenger cruise industry; one member shall be a certified public accountant with at least 5 years of experience in financial management; and two members shall be citizens of the state. The latter three board members shall not be involved in, or have any financial *954 interest in, the piloting profession, the maritime industry, the marine shipping industry, or the commercial passenger cruise industry.
§ 310.011(1), Fla. Stat. The Board’s responsibilities include determining the number of pilots in each port and disciplining pilots when appropriate. See §§ 310.061, 310.101, Fla. Stat. (2014). The Board is not responsible for setting the rates of pilotage in each port — that responsibility falls on the Committee. See § 310.151, Fla. Stat. (2014).
Section 310.151 establishes the Committee as part of the Board and sets forth its composition as follows:
The committee shall consist of the following seven members of the board: two board members who are licensed state pilots actively practicing their profession, who shall be appointed by majority vote of the licensed state pilots serving on the board; two board members who are actively involved in a professional or business capacity in the maritime industry, marine shipping industry, or commercial passenger cruise industry; one board member who is a certified public accountant with at least 5 years of experience in financial management; and two board members who are citizens of the state.
§ 310.151(1), Fla. Stat. An application for a change in pilotage rates may be filed with the Committee by “[a]ny pilot, group of pilots, or other person or group of persons whose substantial interests are directly affected by the rates established by the committee....” §310.151(2), Fla. Stat. Before making a decision regarding the pilotage rates, the Committee must investigate an application for a change in pilot-age rates and must conduct a public hearing on the application. § 310.151(3)-(5), Fla. Stat.
The FCCA initiated the underlying proceeding by filing with the Committee an application for a twenty-five-percent decrease in the pilotage rates charged to passenger vessels, including cruise ships, calling on Port Everglades; the requested rate decrease would apply only to passenger vessels, and the rates for cargo and container vessels would remain the same. In its application, the FCCA asserted in part that it is a not-for-profit trade organization composed of fifteen member cruise lines, including Carnival Cruise Lines and Royal Caribbean; that as the representative of its members who pay millions of dollars each year in pilotage fees for calls on Port Everglades, it is directly affected by the pilotage rates; and that “references to ‘Applicant [the FCCA]’ shall mean all member entities of Applicant.”
The PEPA filed pursuant to section 120.665, Florida Statutes, a motion to disqualify Commissioners Burke and Miguez, two of the Committee members; from the proceedings on the FCCA’s application. The PEPA alleged that Commissioners Burke and Miguez are senior executives of two of the largest cruise lines of the FCCA, the same entity that filed the application to decrease the pilotage rates. Commissioner Burke has been employed by Royal Caribbean for over eleven years and serves as its Vice President of Risk Management, and Commissioner Miguez has been employed by Carnival Cruise Lines for over seventeen years and serves as its Vice President and Deputy General Counsel. The PEPA asserted that “[a] reasonably prudent person would not consider Commissioners Burke and Miguez to be sufficiently insulated from ‘bias, prejudice, or interest’ to be objective members of the Committee” and that “[a] reasonably prudent person would fear that [they] will protect the interests of their companies— and the savings that their companies would enjoy if the application were grant *955 ed — rather than predicate their decisions on an objective assessment of the evidence.” The PEPA argued that because a reasonably prudent person would fear that the proceedings would not be fair and impartial, Commissioners Burke and Miguez must be disqualified.
The Committee denied the PEPA’s motion to disqualify upon finding it lacked authority to compel its members to recuse themselves.' Commissioners Burke and Miguez also each entered an order declining to recuse himself. This petition for writ of prohibition followed.

Analysis

A petition for writ of prohibition based on the denial of a motion for disqualification should be granted when the motion is legally sufficient. Charlotte Cnty. v. IMC-Phosphates Co., 824 So.2d 298, 299-301 (Fla. 1st DCA 2002) (reviewing de novo the decision on a motion to disqualify); see also, e.g., Bundy v. Rudd, 366 So.2d 440, 442 (Fla.1978) (“Once a basis for disqualification has been established, prohibition is both an appropriate and necessary remedy.”).
Section 120.665, Florida Statutes (2014), provides as follows:
(1)Notwithstanding the provisions of s. 112.3143, any individual serving alone or with others as an agency head may be disqualified from serving in an agency proceeding for bias, prejudice, or interest when any party to the agency proceeding shows just cause by a suggestion filed within a reasonable period of time prior to the agency proceeding. If the disqualified individual was appointed, the appointing power may appoint a substitute to serve in the matter from which the individual is disqualified. If the individual is an elected official, the Governor may appoint a substitute to serve in the matter from which the individual is disqualified. However, if a quorum remains after the individual is disqualified, it shall not be necessary to appoint a substitute.
Any agency action taken by a duly' appointed substitute for a disqualified individual shall be as conclusive and effective as if agency action had been taken by the agency as it was- constituted prior to any substitution.
“The Committee is an ‘agency head’ for purposes of the Administrative Procedure Act (APA) because it is responsible for taking final agency action on applications to change pilotage rates.” Biscayne Bay Pilots, Inc. v. Fla. Caribbean-Cruise Ass’n, 160 So.3d 559, 560 (Fla. 1st DCA 2015) (citing section 310.151(4)(a), Florida Statutes (2014)); see also § 120.52(3), Fla. Stat. (2014) (“‘Agency head’ means the person or collegial body in a department or other governmental unit statutorily responsible for final agency action.”).
The question presented by a motion to disqualify filed pursuant to section 120.665 is whether the facts alleged would prompt a reasonably prudent person to fear that he or she will not obtain a fair and impartial hearing. IMC-Phosphates Co., 824 So.2d at 300 (explaining that because “an impartial decision-maker is a basic component of minimum due process in an administrative proceeding,” “in any motion to recuse the head of an administrative agency, the practical recognition of the numerous roles played by the agency as well as the agency head (investigator, prosecutor, adjudicator, and political spokesman) must be weighed against a reasonable fear on the part of the movant that it will not receive a fair and impartial hearing”); see also Biscayne Bay Pilots, Inc., 160 So.3d at 562 n. 5 (noting that the test for legal sufficiency of the petitioner’s motion to disqualify the Commissioners *956 from participating in the proceeding on the FCCA’s application for pilotage rate reduction, filed pursuant to section 120.665, is the one set forth in IMC-Phosphates Co.); Seiden v. Adams, 150 So.3d 1215, 1219-20 (Fla. 4th DCA 2014) (“Under [section 120.665], disqualification is required where ‘the facts alleged would prompt a reasonably prudent person to fear that they will not obtain a fair and impartial hearing.’ Put differently, the ‘test for disqualification has been succinctly stated as being whether a disinterested observer may conclude that the (agency) has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it.’ ”) (Internal citations omitted).
We have explained as follows:
The constitutional guarantee of due process requires that judicial decisions be reached by a means that “preserves both the appearance and reality of fairness.” While the fact-seeking and judicial functions of administrative bodies often overlap without a violation of due process, such a violation is threatened when it becomes clear, based on the unique facts of a particular case, that the agency head cannot carry out his or her judicial function impartially. When the facts indicate that the agency head is predisposed toward a certain outcome from administrative proceedings, the agency head must defer to a neutral third party....
Verizon Bus. Network Servs., Inc. ex rel. MCI Commc'ns, Inc. v. Dep’t of Corr., 988 So.2d 1148, 1151 (Fla. 1st DCA 2008) (internal citations omitted); see also Cherry Commc’ns, Inc. v. Deason, 652 So.2d 803, 805 (Fla.1995) (“[I]n our adversarial system of justice, which places a premium on the fairness of the judicial or quasi-judicial procedure, the decisionmaker must not allow one -side in the dispute to have a special advantage in influencing the decision.”).
Here, although the FCCA is the named party in the underlying proceeding, its member cruise lines (including Carnival and Royal Caribbean) are the de facto parties. See Biscayne Bay Pilots, Inc., 160 So.3d at 560 n. 2 (explaining that this is so because “section 310.151(2), Florida Statutes, only allows groups whose ‘substantial interests are directly affected by the rates set by the committee’ to apply for a rate change and Florida Home Builders Association v. Department of Labor and Employment Security, 412 So.2d 351 (Fla.1982), and its progeny make clear that a trade association’s standing to participate in an administrative proceeding is based on the fact that its members’ substantial interests are being affected by the agency action at issue”).
The FCCA correctly argues, and the PEPA acknowledges, that Chapter 310, Florida Statutes, contemplates the participation of interested persons on the Committee, including employees of the cruise industry. See §§ 310.011(1), 310.151(1), Fla. Stat. (2014). However, the PEPA does not seek to disqualify Commissioners Burke and Miguez because they are associated with the commercial passenger cruise industry. Rather, the PEPA argues that it is the Commissioners’ employment by members of the applicant itself, the FCCA, that demonstrates bias, prejudice, or interest. Under the circumstances of this case, we agree with the PEPA that a reasonably prudent person would fear that he or she would not obtain a fair and impartial proceeding before Committee members who are senior executives of the de facto parties that initiated the proceeding and whose rate change application is awaiting the Commissioners’ decision. Accordingly, the motion to disqualify was le- *957 gaily sufficient and should have been granted.

Conclusion

Based upon the foregoing, we grant the petition for writ of prohibition, quash the orders of Commissioners Burke and Mi-guez denying the motion for disqualification, and remand with directions that the motion be granted.
GRANTED.
ROBERTS, C.J., and BENTON, J., concur.